**GULF OIL CORPORATION, Life of America Building, Plaintiff,**

v.

**Carl F. EISENHOUR, an Executor of the Estate of Arthur S. Hickok, Deceased, in the State of Ohio, an Executor of the Estate of Arthur S. Hickok, Deceased, in the State of Texas, and a Trustee under the Last Will and Testament of Arthur S. Hickok, Deceased, et al., Defendants.**

**Civ. No. 7720.**

United States District Court
N. D. Ohio, W. D.

Jan. 17, 1958.

R. N. Torbet, Zachman, Boxell, Bebout & Torbet, Toledo, Ohio, David W. Stephens, Jesse P. Luton, Jr., Fort Worth, Tex., for plaintiff.

Charles J. Cole, Henry W. Seney, Eastman, Stichter & Smith, James J. Robison, Robert B. Gosline, Toledo, Ohio, Hubert E. Hartman, Detroit, Mich., James A. Rees, Cleveland, Ohio, for defendants.

KLOEB, District Judge.

Under date of February 13, 1957, Plaintiff filed its complaint for interpleader, in which it named some twenty-

one churches, schools, hospitals and other institutions of a charitable or religious nature and six attorneys at law, who represent these institutions, as parties Defendant. For our purposes, these Defendants, their interests being in common, shall hereinafter be referred to as "Charities". The complaint also named the executors and trustees of the estate of Arthur S. Hickok, deceased, the widow and children of the deceased and Hickok and Reynolds, Inc., of Toledo, Ohio, as parties Defendant. Their interests appearing to be in common in this litigation, they are hereinafter referred to as "Fiduciaries".

Plaintiff brings its action under the provisions of Section 1335 of Title 28 of the United States Code Annotated and claims jurisdiction on the ground of diversity of citizenship.

The complaint alleges that Arthur S. Hickok died in Lucas County, Ohio on June 30, 1945, and that his Last Will and Testament was duly admitted to probate in the Probate Court of Lucas County, Ohio on or about July 9, 1945; that said Will was also admitted to probate by the County Court of Eastland County, Texas, and ancillary letters testamentary were issued to the same executors that qualified in Ohio; that, under the Last Will and Testament of the testator, certain property was devised and bequeathed to Walter G. Kirkbride, Carl F. Eisenhour and Clarence H. Hickok as trustees for a period of twenty years after the death of the decedent, and that the remainder, after the expiration of the twenty-year period, was to be divided into five funds which were to be distributed among the Defendant "Charities"; that "Fiduciaries" on the one hand and "Charities" on the other hand are adverse claimants to the proceeds attributable to a certain royalty interest in lands covered by an oil and gas lease, in which royalty interest the deceased at the time of his death held an undivided interest by virtue of being a member of a partnership organized, doing business and registered in and under the laws of the State of Texas under the name of Hickok and Reynolds; that

Plaintiff is the owner and holder of an oil and gas lease executed by Mrs. C. A. Goldsmith and Charley M. Goldsmith and wife (hereinafter referred to as the "Goldsmith Property"), and that it is engaged in the production of oil and gas from the lands covered by said lease; that on or about September 7, 1956, Plaintiff received by mail a copy of a notice of Lis Pendens given by Defendant "Charities" and that said notice of Lis Pendens is filed in the records of the County Clerk, Ector County, Texas; that by reason of said notice Plaintiff, on September 10, 1956, suspended the payments covering the royalty interest in the "Goldsmith Property", effective August 1, 1956; that, on January 24, 1957, Plaintiff was served with a summons and petition in cause No. 182601 in the Court of Common Pleas of Lucas County, Ohio, in which Carl F. Eisenhour, Clarence H. Hickok and The Toledo Trust Company, sole surviving executors of the estate of Arthur S. Hickok, deceased, are Plaintiffs and Plaintiff herein is Defendant, and in this action the Plaintiffs therein allege that they are entitled to the royalty from the "Goldsmith Property"; that, on January 24, 1957, Plaintiff was served with a summons in a similar action filed in the Common Pleas Court of Lucas County, Ohio, in which Carl F. Eisenhour and Clarence H. Hickok, sole surviving trustees under the Last Will and Testament of Arthur S. Hickok, are Plaintiffs and Plaintiff herein is Defendant, and that this suit also involves a claim of ownership to the royalty from the "Goldsmith Property"; that, on January 24, 1957, Plaintiff was served with a summons in a suit in Lucas County, Ohio, in which Daisy S. Hickok is Plaintiff and Plaintiff herein is Defendant, in which suit the "Goldsmith Property" is again at issue; that, Plaintiff being in doubt as to which of said Defendants are entitled to payment of the money which has accrued to this royalty interest since August 1, 1956, and which may hereafter accrue to said royalty interest, and Plaintiff has been and may be subjected to vexatious and multitudinous suits and be further

subjected to multiple payments in the event all of the Defendants should prevail upon their claims against Plaintiff, Plaintiff prays that each of the Defendants be restrained from instituting any action or actions against Plaintiff for the recovery of the proceeds from the royalty interest in the "Goldsmith Property"; that the accruals from the Goldsmith royalties have been paid into the Registry of this Court and will continue to be so paid pending the outcome of this suit and, further, Plaintiff demands that the Defendants herein be required to interplead and settle between themselves their rights to the proceeds attributable to the Goldsmith royalty interest.

A motion for preliminary injunction and an order requiring Defendants to interplead accompanied Plaintiff's complaint, together with a brief in support of the motion, and an order restraining Defendants and requiring Defendants to interplead, which order was on the same day, February 13, approved by the Court and filed.

In due course, answers were filed by the Defendants and, under date of March 28, 1957, the Court, on motion of the "Fiduciary" Defendants, approved an order restraining "Charities" from instituting any action against the moving Defendants or from prosecuting any action or actions against the moving Defendants affecting the Goldsmith royalty interest in Ector County, Texas.

On April 24, 1957, "Charities" moved to stay the proceedings and to dissolve the restraining order issued against them and, in this motion, they move the Court as follows:

"1. For an order staying further proceedings in this cause pending decisions by the Texas Courts in the actions or proceedings now pending in the State of Texas for the reasons:

"(a) That an action is now, and for many years has been, pending in the District Court of Eastland County, Texas, a court of general jurisdiction, which court has sole and exclusive jurisdiction in the premises and had acquired jurisdiction of the subject matter and of the parties, and of all issues presented by the pleadings herein prior to the filing of this suit.

"(b) That the administration of the Texas estate of Arthur S. Hickok, deceased, is now, and for many years has been, pending in the County Court of Eastland County, Texas, a court of probate, which court has sole and exclusive jurisdiction of the administration of said estate in Texas.

"(c) That this Court lacks jurisdiction over the subject matter of the claims made in the answers and the prayers for relief demanded in the answers of defendants Carl F. Eisenhour, et al.

"2. For an order dissolving the restraining order entered March 28, 1957, on the motion of Defendants Carl F. Eisenhour, et al., restraining Defendant "Charities" and their attorneys, LeRoy E. Eastman, et al., from prosecuting the suits or proceedings now pending in the Courts of the State of Texas; said restraining order ought to be dissolved so that the exclusive jurisdiction of said Texas Courts will not be further interfered with and said Texas suits may proceed to an orderly determination."

In due course, briefs were filed in support of and in opposition to the "Charities'" motion to stay the proceedings and to dissolve the restraining order in effect against them, and these briefs were accompanied by affidavits. Under date of November 22, 1957, "Fiduciaries" filed their several motions for summary judgment and accompanied these motions with an affidavit and briefs in support thereof, and Defendant "Charities" filed a memorandum in opposition to these motions.

On December 2, 1957, Defendant "Charities" filed a motion to stay proceedings on the motions for summary judgment and a brief in support thereof. Defendant "Fiduciaries" filed a memorandum in opposition thereto. We come now to consideration of "Charities'" mo-

tion to stay proceedings and dissolve the restraining order of March 28, 1957.

It would seem to be unnecessary to recite in detail all of the facts and the events that transpired from the date the testator executed his Will on February 10, 1945 down to the present day. The assets of the estate located in the State of Texas at the date of the death of testator, June 30, 1945, are in question, and particularly do "Fiduciaries" in this action seek a determination by this Court that they are the owners of the "Goldsmith Property". In the case of Toledo Society for Crippled Children v. Hickok, 152 Tex. 578, 261 S.W. 692, 43 A.L.R.2d 553, dated October 7, 1953, the Supreme Court of Texas, in its opinion by Mr. Justice Garwood, recites a very comprehensive statement of facts and of the history of the estate as it pertained particularly to the assets of the estate located in the State of Texas. In addition thereto, we shall recite only pertinent facts that may aid in an understanding of the situation presented to this Court at this time.

Immediately after the death of testator, the Will was probated in the Probate Court of Lucas County, Ohio and the executors were appointed and qualified. About the same time, a copy of the Will was filed for probate in the County Court of Eastland County, Texas, and the same executors qualified in Ohio were appointed and qualified in the ancillary administration undertaken in Texas. In brief, the Will provided for a trust fund to be comprised of substantially all of the assets of the estate, the income from which should be paid to the widow and two children for a period of twenty years and that then the corpus should be divided into five parts and distributed to "Charities".

In due course, on August 27, 1946, the executors in Ohio filed a petition for construction of the Will, asking the determination of a number of questions, and particularly the applicability of General Code Section 10504–5 (Section 2107.06, Revised Code) to the claim of "Charities" under the Will, testator having died within one year, to wit, four months and twenty days after the execution thereof.

On January 5, 1948, "Charities" filed a petition in the District Court in Eastland County, Texas asking for a construction of the Will as it applied to the Texas assets of the estate and for an accounting. The State of Texas does not have a statute comparable to Ohio General Code Section 10504–5.

On August 11, 1948, an opinion was rendered by the Probate Court of Lucas County, Ohio on the petition for construction of the Will. Therein, the Court determined a number of questions and particularly the applicability of the General Code section in question and concluded that the statute would preclude Defendant "Charities" from taking under the Will. On page 8 of the opinion, which is found in the opinion of the Ohio Court of Appeals for the Sixth District, the Court said the following:

"Coming now to consider the provisions of the will as they relate to the property of the decedent in Texas and New Mexico. The evidence establishes the fact that the oil leasehold interests and royalty interests are considered by the laws of Texas to be real estate.

"It is contended on behalf of the executors and trustees that the doctrine of equitable conversion applies and that those interests are to be considered as personalty."

The Court then analyzes the question of "equitable conversion" and continues as follows on page 9:

"The opinion of this court as to the equitable conversion, however, can not be a controlling judgment. The courts of Texas will determine the effect of the will as it relates to real estate located in that state. The true rule is concisely stated in Vol. 4, Page on Wills, Sec. 1633, page 688, as follows:

" 'The state within whose boundaries a tract of realty is situated has exclusive jurisdiction to create, terminate, etc. all the rights which

exist in such realty, no matter where the owners of the different rights may be domiciled.'

"The United States Supreme Court in De Vaughn v. Hutchinson, 165 U.S. 566 [17 S.Ct. 461, 41 L.Ed. 827], say:

" 'It is a principle firmly established that under the law of the state in which the land is situated we must look for the rules which govern its design, alienation, and transfer, and for the effect and construction of wills and its other conveyances.' "

On appeal, the Court of Appeals of Lucas County, Ohio, on July 11, 1949, adopted as the opinion of that Court the opinion of the Probate Court and ordered that "the same judgment will be entered herein as was entered in that Court".

On April 25, 1951, the Supreme Court, Kirkbride v. Hickok, 155 Ohio St. 293, 98 N.E.2d 815, rendered its opinion on appeal from the Court of Appeals for Lucas County, Ohio, and confined its decision to the question raised over the applicability of the General Code section heretofore quoted. The Court did not attempt to analyze the question of the devolution of the assets of the estate located in Texas. It concluded by affirming the judgment of the Court of Appeals.

For a period of ten years, and beginning January 5, 1948, when Defendant "Charities" filed their petition in the District Court of Eastland County, Texas for a construction of the Will and for an accounting, the litigation over the assets that testator died seized of in the State of Texas has continued almost without interruption, save for a truce covering a period of time awaiting the decision of the Ohio Supreme Court rendered in April of 1951.

The inventory of the assets located in Ohio listed property of almost $5,000,000 value and consisting of moneys, credits, stocks, bonds and various parcels of Ohio real estate. The undivided one-half interest in the partnership of Hickok and Reynolds comprised Texas real estate, mineral interests, oil and gas leases, and similar assets connected with the oil industry. These assets were not included in the inventory of the Texas estate and have not been inventoried or accounted for in Texas. The value of this partnership interest is considerable and it includes in particular the "Goldsmith Property" interests which alone are of great value.

The Supreme Court of Texas concluded that the testator's Will was valid in Texas; that the Texas assets were "land"; that the Ohio Courts did not attempt to exercise jurisdiction over the Texas real estate; that it, the Texas Court, had exclusive jurisdiction of the Texas real estate; that the Defendant "Charities" have a vested remainder in all of the Texas real estate subject to the twenty-year trust, and that the doctrine of equitable conversion does not apply to these assets in the State of Texas.

The Court remanded the case to the District Court of Eastland County, Texas and thereafter Defendant "Charities" pressed for and are pressing for an accounting under a Special Master appointed by the Court.

It appears to be the position of Defendant "Fiduciaries":

*First*, that the language of Section 2361 of Title 28 of the United States Code Annotated is mandatory and that the Court here must hear and determine the issue of the ownership of the Texas assets and particularly the "Goldsmith Property".

Section 2361 provides in part:

"In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, * * * involved in the interpleader action until further order of the court. * *

"Such district court shall hear and determine the case, and may discharge the plaintiff from further lia-

bility, make the injunction permanent, and make all appropriate orders to enforce its judgment."

*Second,* Defendant "Fiduciaries" take the position that the jurisdiction of this Court is based upon diversity of citizenship and, therefore, requires that this Court act in this case and determine the issues as an Ohio Court; that it is, therefore, bound by the decisions of the Courts of Ohio and particularly by 155 Ohio St. 293, 98 N.E.2d 815.

*Third,* Defendant "Fiduciaries" contend that the Supreme Court of Ohio decision is res adjudicata insofar as it has any application to the "Goldsmith Property" and that "Charities", therefore, seek to re-litigate in Texas a matter that is res adjudicata.

■ Let us analyze positions one and two. We are not convinced that under the wording of the statute it is mandatory for this Court to determine the issue of the ownership of the "Goldsmith Property". We do not believe that Plaintiff, through the selection of this forum to protect it from multitudinous suits, is in a position to ask or demand that this Court determine the issue between "Charities" and "Fiduciaries" if, in so doing, it is necessary to violate fundamental rights of one of the parties and run counter to established principles of law.

In the case of Sanders v. Armour Fertilizer Works, 292 U.S. 190, at page 200, 54 S.Ct. 677, at page 680, 78 L.Ed. 1206, we find the following:

" 'We do not think the filing of the federal interpleader and the payment thereunder of the money into the District Court in Texas operated to bring it under the dominion of Texas law. The applicant for interpleader often has a choice of forum, and he cannot at his will subject the rights of the contesting claimants to one set of laws rather than another. The purpose of the interpleader statute was to give the stakeholder protection, but in nowise to change the rights of the claimants by its

operation. The interpleader is a suit in equity, and equitable principles and procedure are the same throughout the federal jurisdiction. The court is to weigh the right or title of each claimant under the law of the state in which it arose, and determine which according to equity is the better. The decision should be the same whether the interpleader is filed in Illinois or in Texas. No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them.' ([5 Cir.], 63 F.2d 902, 906.)"

We believe that the underlying purpose of Plaintiff in instituting this suit was to protect itself and we believe that we can afford that protection without the necessity of clashing head-on with set principles of law.

■ The Texas Courts assumed jurisdiction over the assets of this estate located in the State of Texas immediately after the death of testator. The Will was admitted to probate and ancillary administration undertaken. A petition for the construction of the Will followed and the decision of the District Court is Eastland County, Texas was appealed to the Court of Appeals, 252 S.W.2d 739, and from thence to the Supreme Court of Texas, 152 Tex. 578, 261 S.W.2d 692, 43 A.L.R.2d 553. All Defendants were parties thereto. The Supreme Court of Texas concluded that it was not the intention nor the purpose of the Supreme Court of Ohio to exercise jurisdiction over the property in Texas and hence took the position that the decision of the Supreme Court of Ohio in connection with General Code Section 10504–5, was not res adjudicata as to the Texas Courts. With this we agree. The Supreme Court of Texas concluded that the assets of the estate in the State of Texas were immovables, were within its jurisdiction and subject thereto, and that Defendant "Charities" had a vested right in the corpus of the estate in Texas at the expiration of the trust period. The Texas Court further concluded that the doctrine

of equitable conversion, on which Defendant "Fiduciaries" rely, does not apply to these assets in the State of Texas. We are not disposed to disagree with the conclusions of the Texas Court. We feel that we could not disagree if we desired to do so, first, because the law of a State in which the land is situated controls and governs its transmission by Will (Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028), and, second, because the Texas Courts took jurisdiction ten years ago and we are, therefore, precluded from encroaching upon their prerogatives. In the case of Baltimore & O. R. Co. v. Wabash R. Co., 7 Cir., 119 F. 678, at page 679, we find the following:

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. Harkrader v. Wadley, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399; Farmers' Loan & Trust Co. of New York v. Lake Street El. R. Co., 177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667. We have followed this rule, declaring 'that the court which first obtains possession of the res or of the controversy, by priority in the service of its process, acquires exclusive jurisdiction for all the purposes of a complete adjudication.' Clark v. 505,000 Feet of Lumber [7 Cir.], 65 F. 236, 12 C.C.A. 628, 24 U.S.App. 509, 517. The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. of New York v. Lake Street El. R. Co., supra; Merritt v. American Steel-Barge Co. [8 Cir.], 79 F. 228, 24 C.C.A. 530, 49 U.S.App. 85. * * *"

In the case of Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, at page 466, 59 S.Ct. 275, at page 280, 83 L.Ed. 285, we find the following:

"* * * for it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. * * *"

We believe that we have no right or authority to interfere with the conclusion of the Texas litigation or to attempt to usurp the jurisdiction of the Texas Courts over the assets within its jurisdiction.

We turn to the third position of Defendant "Fiduciaries" that the decision of the Supreme Court of Ohio is res adjudicata insofar as it has any application to the "Goldsmith Property", and that the "Charities", therefore, seek to re-litigate in Texas a matter that is res adjudicata.

We do not believe that the Supreme Court of Ohio in its opinion in 155 Ohio St. 293, 98 N.E.2d 815 attempted to or intended to apply the provisions of Section 10504-5 General Code to the assets of the estate in Texas. The Supreme Court of Texas so concluded and with this we agree. The history of the Ohio litigation leads us to conclude that the Ohio Courts, including the Probate Court, the Court of Appeals for Lucas County, and the Supreme Court of Ohio, had and kept under consideration only the assets within the State of Ohio. The heretofore quoted portion of the opinion of the Probate Court so limits it in its conclusions. The Court of Appeals adopted the opinion of the Probate Court. The only question undertaken to be solved by the Supreme Court of Ohio was the question of the applicability of the General Code section and nowhere does it appear that the question of the Texas assets and their devolution was presented to the Supreme Court or considered by it. If the Supreme Court of Ohio had elected to consider the question of the Texas properties it would have found itself squarely confronted with Clarke v. Clarke, supra.

The motion of Defendant "Charities" to stay proceedings and to dissolve the restraining order issued against it is sustained in its entirety. It follows that the motion of Defendant "Charities" to stay proceedings on motions for summary judgment is sustained.

Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides in part as follows:

"Findings by the Court

"(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. * * ".

We are, in effect, refusing an injunction and, therefore, in the interest of caution, we suggest to Defendant "Charities" that findings of fact and conclusions of law, drawn in accordance with this opinion, be prepared and filed within fifteen (15) days. Defendant "Fiduciaries" may file their exceptions or suggested additions thereto within ten (10) days thereafter.