JAMES WILLIAMS, PLAINTIFF IN ERROR, *v.* THE UNITED STATES, DE-
FENDANTS IN ERROR.

The act of Congress passed January 31st, 1823, prohibiting the advance of
public money in any case whatsoever to the disbursing officers of govern-
ment, except under the special direction of the President, does not require the
personal and ministerial performance of this duty, to be exercised in every
instance by the President under his own hand.

Such a practice, if it were possible, would absorb the duties of the various de-
partments of the government in the personal action of the one chief execu-
tive officer, and be fraught with mischief to the public service.

The President's duty, in general, requires his superintendence of the adminis-
tration, yet he cannot be required to become the administrative officer of
every department and bureau, or to perform in person the numerous details
incident to services, which, nevertheless, he is, in a correct sense, by the
Constitution and laws required and expected to perform.

It is legal evidence that the President specially authorized and directed, in writ-
ing, the secretary of the Treasury to make such advances, and that such
paper was destroyed, when the Treasury building was burned. It is suffi-
cient if the witness states his belief that it was so destroyed. The case in
9 Wheat. 486, examined and confirmed.

The *dockets* and *records of a court, showing that money had been received by
the marshal or his deputies, under executions, are good evidence in a suit
against his securities.* The acts of the court must, in the first instance, be
presumed to be regular, and in conformity with settled usage; and are con-
clusive until reversed by a competent authority.

THIS case came up by writ of error from the Circuit Court of
the United States for the District of Columbia, holden in and for
the county of Washington.

The facts were these:

On the 4th of February, 1831, Henry Ashton was appointed
marshal of the District of Columbia, and on the 7th executed
a bond for the faithful performance of the duties, by himself and
his deputies. There were several securities, among whom was
James Williams, the plaintiff in error. He remained in office
until the 28th of February, 1834.

In June, 1835, the United States brought suit upon the bond,
to which there was a plea of performance. The replication
assigned five breaches. 1. That he had neglected to return exe-
cutions issued for fines and costs. 2. That he had discharged
persons committed to his custody under execution. 3. That he
had not accounted for fines paid. 4. That he had not accounted

for money advanced to him by the secretary of the Treasury under the special direction of the President of the United States; and, 5. That he had discharged persons from prison without authority of law. To this replication, there were a rejoinder and issues, and in 1839 the case was tried. The verdict of the jury was for the United States. The two bills of exception taken at the trial are set forth in the opinion of the court, and need not be repeated.

*Bradley,* for the plaintiff in error.

*Legaré,* attorney-general, for the United States.

*Bradley* made the following points:

1. The President of the United States holds a relation toward the secretary of the Treasury different from that which he holds toward the head of any other department.

2. No money can be drawn from the Treasury but in the manner and upon the vouchers designated by law.

3. Where a special discretion is given by positive law to the President to direct money appropriated by law to be paid out of the Treasury, it must be exercised by him alone, and cannot be delegated.

4. Where money is by law to be drawn from the Treasury by a special authority, different from the usual manner, that special authority must be deposited in the Treasury Department, and form part in the settlement of the Treasury account.

5. And: The Treasury transcript is not evidence *per se* to charge a surety with money so paid to his principal; but must be accompanied by a copy of the voucher on which such payment was made.

To support them, he argued that the United States were bound to show the exercise of the special power vested in the President. The Treasury transcript is not conclusive evidence that the money was drawn from the Treasury legally. 5 Peters, 292; 8 Peters, 375. Evidence of the contents of the order said to have been given by the President could not be received, as there was no proof of its loss. 2 Stark. Ev. 350. Court say, in 1 Peters, 596, that proof must be given of its loss, and that it was searched for. If the money was not placed with the marshal according to law, the United States cannot recover.

As to the second exception:

The declarations of the marshal do not bind the sureties; not evidence unless in the regular course of his business, and he had nothing to do with the docket. If an endorsement be made on the writ, it is his official act, but not otherwise. 3 Bro. and Bing. 132.

The act of Maryland, February, 1777, c. 13, sec. 2, provides for the recovery of common law fines by *fieri facias* or *ca. sa.*, but the act of 1797, c. 74, directs *capias ad satisfaciendum* to be issued for all fines. Here were *fi. fa.* for common law fines, which proceeding was contrary to law. The act of 1794, c. 54, provides remedies against the sheriff, and, of course, the marshal; judgment should have been entered up against him. No action on the bond until a judicial sentence of default 18 Johns. 391.

*Legaré,* for the United States.

If the President could not delegate this power, he could do little else but look at marshal's accounts. But this court have recognised the authority to delegate. Wilcox *v.* Jackson, 13 Peters; 10 Peters, 291; 1 Peters, 296.

As to the evidence: The court has allowed reasonable evidence to be given. 7 Peters, 99; 12 Peters, 3.

As to the Maryland practice:

The general rule is, that an admission of a deputy does not bind surety; but see 10 Barn. and Cres. 17, 317. In this case the party is dead, and it is his declaration against his own interest. But the acts of parties, part of the *res gesta,* are binding. 8 Wheat. 326; 3 Wash. C. C. R. 369. The confession of an under-sheriff evidence against the sheriff. 1 Lord Raym. 190. At common law, *fi. fa.* could issue for fines. 3 Coke, 12, b; 2 Just. 19. The act of Maryland was merely directory. Inventory of sheriff evidence between other parties. Buller's N. P. 249; 2 Campb. 379.

*Bradley,* in conclusion:

The act of 1809, c. 199, gives the President power to transfer appropriations; but no one supposes he can delegate this power to the secretary. In Kendall's case, 12 Peters, the court draw a

distinction between general and special powers. General rule is, that discretionary powers cannot be delegated.

Mr. Justice DANIEL delivered the opinion of the court.

This cause comes up on a writ of error to the Circuit Court of the United States for the District of Columbia.

The defendants in error instituted an action of debt in the Circuit Court against the plaintiff in error, as surety for Henry Ashton, deceased, late marshal of the District of Columbia, in a bond executed by Ashton, conditioned for the faithful perform- ance of the duties of his office. On oyer of the bond, the de- fendant pleaded generally conditions performed by the marshal and his deputies; after this plea various breaches of the condition of the bond were specially assigned, charging the late marshal with failing to account for moneys advanced to him by the secre- tary of the Treasury, under special direction of the President of the United States; with not having accounted for and paid over moneys received by him and his deputies on executions, and with having failed to collect under executions which came to his hands, moneys that he ought to have collected from persons who were solvent. Issues were taken to the country upon the several breaches thus assigned, and the jury empannelled to try those issues, returned as their verdict in substance, that the said Henry Ashton, by himself and his deputies, did not well and faithfully perform and fulfil all the duties of his office of marshal of the district, in pursuance of the acts of Congress in such cases made and provided; and they found the sum of $8279 25 cents, with interest thereon from the 24th day of November, 1836, to be really and justly due to the United States on the marshal's bond. Upon this verdict the court gave a judgment for $20,000, the penalty of the bond, but to be discharged by the amount assessed by the jury, together with the costs of suit.

At the trial, and before the jurors withdrew from the bar, the defendant below tendered two bills of exceptions to the ruling of the court in the cause, which bills of exceptions are as follow:

Defendant's first bill of exceptions.—On the trial of this cause, the plaintiffs, to support the issues joined, on their part, offered to give in evidence the accounts settled between the United States

and Henry Ashton, late marshal of the District of Columbia, upon whose official bond this action is brought against the defendant, as one of the sureties therein named. By these accounts it appears, that a balance appears due from the said Ashton to the United States, of $6455. 16. That in making up the said balance, various sums of money were, from time to time, during his continuance in office, advanced and paid to him, as marshal as aforesaid, out of the Treasury of the United States, by order of the secretary of the Treasury, before the said Ashton, as marshal, had rendered accounts or vouchers, showing that he had himself advanced and paid the same, or any part thereof, to those entitled by law to receive the same; and while balances for moneys previously advanced to him existed on the books of the department, and before it had been shown that the same had been properly applied and expended, and when the said sum of $6455 16, was not in fact due from the United States for any services rendered or money expended.

And the plaintiffs offered in evidence the statements of Asbury Dickins, formerly a clerk in the Treasury Department, and of McClintock Young, now chief clerk of said department; which, reserving all objections to the competency of such testimony, it was agreed should be received as if said parties had been sworn in the case, and had testified in accordance with said statements. To the admissibility of all which testimony the defendant objects, but the court overruled the objection, and the defendant, by his counsel, excepts; and the said evidence being thus admitted to go to the jury, the counsel for the plaintiffs prayed the court to instruct the jury, that upon this evidence the plaintiff was entitled to recover the said sum of $6445 16, against the defendant; and the court overruling the objection of the defendant thereto, gave said instruction, to which the defendant excepts; and the court, in pursuance of the statute, sign and seal this bill of exceptions to all the matters so ruled, as aforesaid, this 11th day of January, 1840.

W. CRANCH, [L. S.]

B. THRUSTON, [L. S.]

JAMES S. MORSELL. [L. S.]

Second bill of exceptions.—In the further trial of this cause, the plaintiffs produced the dockets and records of this court, showing that in a number of cases where judgment had been entered

against defendants for common law fines, forfeitures, and costs, adjudged against the said defendants, and the said defendants had paid the said amounts, so respectively adjudged against them, to the marshal, and entries were thereupon made by the said marshal or his deputy, on the dockets of said courts, "money made and ready," " money paid," and that the amounts so received by said marshal amounted to the sum of

And the plaintiffs further proved by the dockets, records, &c., as aforesaid, that certain sums of money were adjudged by the court aforesaid, against certain defendants, for common law fines, forfetures, and costs, upon which writs of *ca. sa.* were issued, which writs were returned by the marshal, " satisfied marshal," and showed that the said sums so received by said Ashton, amounted to

And the defendant objected to the said several amounts as being recoverable in this action against the said defendant, and prayed the court to instruct the jury that he was not liable therefor; but the court refused so to instruct the jury, and instructed them that the defendant was liable for the amounts so received by said Ashton.

To which refusal the defendant, by his counsel, excepts, and prays the court to sign and seal this bill of exceptions, which is done accordingly, this 11th day of January, 1840.

W. CRANCH,      [L. s.]

JAMES S. MORSELL. [L. s.]

The statements of Asbury Dickins and McClintock Young, referred to in the first bill of exceptions, are in the following words:

*Washington, January* 11, 1840.

DEAR SIR :—In compliance with your request, I now state, as I mentioned to you verbally, some time ago, that it is within my recollection that soon after the passing of the "act (of the 31st of January, 1823,) concerning the disbursement of public money," the secretary of the Treasury was specially authorized and directed in writing, by the President of the United States, to make such advances of money, from time to time, to various classes of the disbursing officers of the government, and among others to the marshals of the United States, as should be found necesary, to the faithful and prompt discharge of their respective duties, and

to the fulfilment of the public engagements. The papers containing these directions of the President were, as I believe, destroyed in the late burning of the Treasury building.

I am, dear sir, sincerely yours,

ASBURY DICKINS.

To *Francis S. Key, Esq., &c. &c. &c*

DEAR SIR:—In reply to your inquiry, I have to state, that all advances to marshals U. S. are made by the secretary of the Treasury, and not by direction of the accounting officers.

Yours resp'y,

McC. YOUNG.

*11th January,* 1840.

*F. S. Key, Esq.*

The questions presented for consideration here upon the aforegoing bills of exceptions, and the proofs to which they refer are these : 1. Whether the sums of money placed in the hands of the late marshal by the secretary of the Treasury, and forming a part of the aggregate found by the verdict of the jury, were so advanced in conformity with the law, as to create a liability on the part of the sureties of the marshal for their proper application by that officer? and

2. Whether the several sums admitted to have been paid to the marshal upon executions for fines, forfeitures, and costs adjudged against various defendants, and as to a part of which sums the marshal or his deputy had made upon "the dockets of the court," the following entries, "money made and ready" and "money paid;" and as to other portions of which levied on executions for fines and forfeitures, the marshal had made on the executions themselves this entry, "satisfied marshal," were so proved to have been received by the marshal in virtue of his office, as to render his sureties responsible for these latter sums?

Under the first of these inquiries, it is contended for the plaintiff in error, that the act of Congress of January 31, 1823, expressly prohibits the advancing of public money in any case whatsoever, except under the special direction of the President, to the disbursing officers of the government, for the faithful and prompt discharge of their public duties, and to the fulfilment of the public faith : and it is insisted upon as the correct interpretation of this statute, that the power thereby vested to make advances for the

public service, is not one appertaining to the office of President, but is an authority strictly personal and ministerial, to be exercised in every instance only by the individual himself, by his own hand, and never in any respect to be delegated. Such an interpretation of the law this court can by no means admit. While it has been doubtless the object of Congress to secure economy and regularity in public disbursements, and for that end to limit, as far as was proper, the discretion of subordinate agents over the public money, it never can be reasonable to ascribe to them a conduct which must defeat every beneficial end they could have in view, and render the government an absolutely impracticable machine. The President's duty in general requires his superintendence of the administration; yet this duty cannot require of him to become the administrative officer of every department and bureau, or to perform in person the numerous details incident to services which, nevertheless, he is, in a correct sense, by the Constitution and laws required and expected to perform. This cannot be, 1st, Because, if it were practicable, it would be to absorb the duties and responsibilities of the various departments of the government in the personal action of the one chief executive officer. It cannot be, for the stronger reason, that it is impracticable—nay, impossible. The position here assumed may be illustrated in the single example of a marshal. This officer has various duties to perform, which, though well understood, yet all of them, as to duration and extent, contingent, and varying, of course, as to the quantum of expense attending their performance. He is to summon and pay grand and petit juries and witnesses; to provide stationery and fuel for the court; guards for the transportation and safe-keeping of prisoners; to pay the per diem allowed to clerks and attorneys, and other incidental charges. If the argument for the plaintiff in error be correct, it would be indispensable either that the President should ascertain (and that too before their performance, or, in other words, their existence) these indefinable services, and, when so ascertained, that he, under his own hand, and none other, should give special written instructions for the payment of each one of them; or that the marshal should, upon credit, or from his own private resources, obtain the performance of these services, and await his reimbursement upon accounts to be subsequently allowed and cer-

tified by the court. Such consequences, so fraught with mischief to the public service, utterly forbid the construction of the law contended for by the plaintiff in error. If it be asked, How then shall the provisions and the purposes of the statute be fulfilled? the answer is obvious, and satisfies at once the meaning of the law and the public exigencies. Average estimates may be formed of the expenses incident to the courts, and instructions may be given by the President to the secretary of the Treasury to make advances from time to time, either upon the basis of those estimates, or upon statements or requisitions made by the marshals themselves, showing the necessity of advances to meet the public service. And this plain and only feasible mode of complying with the law appears to have been adopted and to have become the settled usage of the government, as is shown by the testimony of Asbury Dickins, admitted by the parties to be received as if taken upon oath. It is insisted, however, that if this interpretation of the statute be the true one, still a compliance with its requirements has not been shown; that neither is an order from the President to the secretary of the Treasury nor the copy of such an order produced; nor is the absence of both or either of these so accounted for as to authorize the admission of inferior evidence to supply their place. How stands this objection? Dickins, formerly a clerk in the Treasury Department, states it to be a fact " within his recollection, that soon after the passing of the act of January 31, 1823, concerning the disbursement of the public money, the secretary of the Treasury was specially authorized and directed in writing, by the President of the United States, to make such advances of money, from time to time, to various classes of disbursing officers of the government, and among others to the marshals, as should be found necessary to the faithful and prompt discharge of their respective duties, and to the fulfilment of the public engagements. The papers containing these directions of the President were, as he believes, destroyed in the late burning of the Treasury building." The general principle as to the admissibility of secondary evidence is familiar to all, and will receive no comment from the court; but we will simply inquire whether the facts here shown do not present a case falling within the operation of that principle? What does Dickins prove? 1st, The existence of the special written instruc-

tion from the President, made expressly to carry into effect the law of 1823, and forming the established rule and usage of the department; 2d, The conflagration of the Treasury Department, the legal and proper depository for this instruction; and, 3dly, The belief of the witness, then a clerk in the Department, and, by consequence, to a great extent cognisant of its arrangement and condition, that the document was destroyed in that conflagration. Authorities need not be multiplied to show that the case before us is completely within the rule respecting secondary evidence; a single decision of this court will be cited, as placing that matter wholly beyond controversy. In Riggs v. Tayloe, 9 Wheat. 486, the court, after laying down the general rule, proceeds thus: "It is contended that the affidavit is defective; not being sufficiently certain and positive as to the loss of the particular writing. The affiant only states his impression that he tore it up; and if he did not tear it up, it has become lost or mislaid; that this is in the alternative, and not certain and positive. We do not concur in this reasoning. An impression is an image fixed in the mind; it is belief; and believing the paper in question was destroyed has been deemed sufficient to let in the secondary evidence." The testimony of Dickins appears to this court much more direct upon the point than that admitted in the case of Riggs v. Tayloe: we consider it as fully justifying oral proof of the contents of the instrument to which it related, and as establishing the character and import of that instrument, as well as the usage founded thereupon; and upon this fact of the usage, Dickins is corroborated by the testimony of Young, the chief clerk in the Treasury Department at the time of the trial.

In considering the second exception made by the defendant, it may be remarked that the grounds of the exception are not stated with that distinctness and precision necessary to clear it entirely of obscurity; still the statement is thought to contain enough to guide the court to a correct solution of the question involved. The second bill of exceptions sets forth that the plaintiffs produced the dockets and records of the court, showing that in a number of cases where judgments had been entered against defendants for common law fines, forfeitures, and costs, and the said defendants had paid the amounts so respectively adjudged against them to the marshal, and ent es were made by the said

marshal or his deputy, on the said dockets, "money made and ready," "money paid;" and that the amounts so received amounted, &c. And again: The plaintiffs further proved by the dockets, records, &c., that certain sums of money were adjudged by the court against certain defendants for fines, forfeitures, &c., upon which judgments writs of *ca. sa.* were issued, which writs were returned by the marshal, "satisfied marshal," and showed that the said sums amounted, &c. In the evidence set forth upon the face of these exceptions, nothing particular is disclosed relative to the modes of proceeding on executions, or of the means in practice by the court for recording and preserving the evidence of such proceedings, or of the acts and returns of the officers who may be charged with the management of final process; of course nothing is adduced to impeach the regularity of the reception by the court, of the returns and entries made by the marshal, or of the manner of placing them permanently upon the archives of the court. But it is admitted in the exception, that all these things are apparent on the records, viz.: The judgments and executions; the receipt of the money by the marshal, and his admissions of the receipt thereof, both by himself and his deputies. These facts are conceded to be parts of the records of the court to which the officer properly belonged, and before which his conduct was regularly cognisable: a tribunal in all respects competent to pass upon his acts; competent to fashion its records, and to preserve the evidences of its own proceedings and of the acts of its officers. The acts of this court, then, must, in the first instance, be presumed to be regular, and in conformity with settled usage; and they are conclusive until they shall be reversed by a competent power, and upon a case properly made. Upon both the instructions given and excepted to, in this cause, we approve the opinion of the Circuit Court, and therefore affirm the same.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed.