**The PRUDENTIAL INSURANCE COM-PANY OF AMERICA, a corpora-tion, Plaintiff,**

**v.**

**Elno SHAWVER and Len L. Shawver, Defendants.**

**Civil No. 770.**

United States District Court
W. D. Missouri,
Central Division.

July 13, 1962.

Henry G. Eager of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for plaintiff.

Howard L. McFadden, Jefferson City, Mo., for defendant Elno Shawver.

BECKER, District Judge.

This is an action filed by the Prudential Insurance Company of America, a New Jersey corporation, under the provisions of the Interpleader Act, §§ 1335,

1397, and 2361, Title 28 U.S.C.A. The defendants, formerly wife and husband and now divorced, are Elno Shawver, a citizen of Missouri, and Len L. Shawver, a citizen of Arkansas. The amount involved exceeds $500 exclusive of interest and costs.

The defendant Elno Shawver of Jefferson City, Cole County, Missouri, has filed motions to dissolve the temporary restraining order granted *ex parte*, on filing of the complaint, and to dismiss the complaint. No evidence was offered in support of or in opposition to the motion to dissolve. Defendant Len L. Shawver of Arkansas is in default in this cause.

For the purposes of determining these motions, the facts appear from the pleadings, as follows:

On January 1, 1950, in Missouri, Prudential issued a "Modified Whole Life Policy" of insurance upon the life of the defendant Len L. Shawver. The defendant Elno Shawver of Missouri, then the wife of the insured, was designated as primary beneficiary and payee of all proceeds which might be due by reason of the insured's death. Among the other terms, provisions, and conditions of the policy are the following:

"*Control.*—Except as may be otherwise provided by endorsement hereon by the Company or by any law to which this Policy is subject, the person herein designated the Insured shall be entitled during his or her lifetime, without the consent and to the exclusion of any Beneficiary, to receive any benefit payable and any value obtainable under this Policy and to exercise any rights and privileges conferred by this Policy or allowed by the Company.

\* \* \* \* \* \*

"*Deferment* \* \* \* The Company shall have the right \* \* \* to defer the payment of any cash surrender value for a period not exceeding six months after receipt at the Home Office of proper written application therefor. If payment of the cash surrender value is so deferred thirty days or more, it will bear interest at the rate of 2½ per cent per annum during the period of deferment.

\* \* \* \* \* \*

"*Cash Value and Reduced Paid-up Insurance Options.*—If premiums have been paid to or beyond the end of the period when a cash surrender value is first shown in the table of loan and non-forfeiture values, either one of the following options may be elected by proper written application and submission of this Policy to the Home Office, but if any premium is in default such election must be made within three months from the due date of the premium in default. Such election in either case shall render inoperative the extended insurance otherwise automatically provided.

"(a) Cash Value Option.—This Policy may be surrendered for its net cash value which will be the cash surrender value determined in accordance with the Table of Loan and Non-forfeiture Values, less any existing indebtedness on this Policy, plus the then present value of any existing paid-up dividend additions together with any other dividend credits existing on this Policy."

\* \* \* \* \* \*

"*Surrender of Extended or Reduced Paid-up Insurance.*—Any extended insurance commencing at or after the end of the period when a cash surrender value is first shown in the Table of Loan and Non-forfeiture Values, or any reduced paid-up insurance, may be surrendered upon proper written application and legal surrender of this Policy. The surrender value of such extended insurance or reduced paid-up insurance shall be equal to its present value on the date of surrender, including any existing paid-up dividend additions, less any existing indebtedness on this Policy, except that in the case of surrender within

thirty days after any policy anniversary the present value shall be computed as of such anniversary."

Monthly premiums were paid on the policy until default on January 1, 1960. At that time the policy had a cash surrender value of at least $607.81, which is the cash surrender value according to the claim of the plaintiff Prudential. The cash surrender value at that time was at least $1,128 according to the claim of the beneficiary Elno Shawver.

The extended term insurance, upon default, is at least $7,182.79 for a period of 11 years and 158 days. The amount of paid up reduced insurance available does not appear.

Prior to January 31, 1961, the beneficiary Elno Shawver of Missouri had procured a personal judgment in the Circuit Court of Cole County, Missouri (a court of general jurisdiction) for $2,825 against the insured Len L. Shawver, now of Arkansas. On January 31, 1961, the defendant Elno Shawver of Missouri caused a summons to garnishee to be issued to the plaintiff Prudential in aid of the general execution upon the Missouri judgment against Len L. Shawver of Arkansas. In due course, the plaintiff Prudential was summoned as a garnishee by service of process upon the Superintendent of the Missouri Division of Insurance. These, and all subsequent proceedings in garnishment, were in accordance with the Missouri Statutes and Rules of Civil Procedure. §§ 375.210, 375.160 V.A.M.S.; Civil Rule 90, V.A. M.R.

On July 24, 1961, in the garnishment proceedings, the Circuit Court of Cole County, Missouri, rendered a summary judgment in favor of Elno Shawver of Missouri, defendant herein, and against the garnishee Prudential in the sum of $1,128 and costs. The garnishee Prudential thereafter moved that the summary judgment, previously entered, be set aside, and in lieu thereof a final judgment be entered in favor of the garnishee, or in the alternative, that a new trial be granted. These motions challenged the jurisdiction of the Court to enter the summary judgment, and asserted that there were genuine issues as to material facts concerning the liability of the garnishee Prudential to pay the cash surrender value on execution.

In support of these post judgment motions, the affidavit of defendant Len L. Shawver of Arkansas concerning an application for cash surrender value submitted to Prudential by him and the subsequent withdrawal thereof was submitted. Also submitted was an affidavit of Schubert, an employee of Prudential, concerning a conversation with the defendant Elno Shawver of Missouri in which she expressed a desire for continued insurance rather than for cash. These affidavits are attached to the complaint as exhibits.

On September 15, 1961, the post judgment motions of Prudential were overruled. Before filing this interpleader action the garnishee Prudential appealed to the Kansas City Court of Appeals for reversal of the judgment of the Circuit Court of Cole County in the garnishment action. This appeal is now pending.

While the appeal was pending, and on October 6, 1961, this interpleader action was filed. On the same day this Court issued *ex parte*, a temporary restraining order against the defendants, restraining them from instituting, commencing, maintaining, or prosecuting or enforcing any proceeding, suit, or action whatsoever in any court of any state or of the United States, including the pending Cole County action, relating to the values, benefits and proceeds of the policy in question. At the same time, summons were issued upon the complaint to both of the defendants, and subsequently served.

The pleadings in this action are silent on the questions whether Len L. Shawver of Arkansas appeared in the Missouri garnishment proceeding and whether he was given timely notice and opportunity to defend the garnishment proceedings by the plaintiff Prudential. Although nothing is said in the pleadings about jurisdiction of defendant's person in the original Missouri action resulting

in the judgment for $2,825, the presumption of regularity of those proceedings will be indulged and jurisdiction over his person presumed. Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146; Williams v. United States, 42 U.S. 290, 1 How. 290, 11 L.Ed. 135.

The motions to dismiss and to dissolve the restraining order are based upon the following asserted grounds:

1. Lack of jurisdiction in this Court over the subject matter because the Missouri state court, having jurisdiction over the *res*, has rendered a final judgment entitled to full faith and credit, "thus obviating vexatious claims in other states."

2. Obligation, under the circumstances, of the Court to refuse to exercise jurisdiction, even if jurisdiction is possessed.

3. Laches of the plaintiff.

4. Impropriety of granting the restraining order (*ex parte*) without notice or hearing.

Counsel for the plaintiff and defendant Elno Shawver have provided excellent briefs which are admirably concise.

Upon full consideration of the issues raised by the motions, the Court has reached the conclusion that the motions to dismiss and to dissolve the restraining order should be overruled, but that the restraining order should be modified to permit the plaintiff and defendants to proceed with the pending appeal, and with other proceedings involved in the final determination of the state court garnishment proceedings. The reasons for these conclusions follow:

■ This is not a strict bill of interpleader in which the plaintiff is a disinterested stake holder. The plaintiff and at least one of the defendants, Elno Shawver of Missouri, are engaged in a controversy concerning the amount of the stake, namely the cash surrender value. They are also engaged in a controversy over the nature of the stake (whether it is cash or extended insurance), as well as liability of the stake to execution on the Missouri judgment. Under such circumstances, the plaintiff is not a disinterested stake holder. Standard Surety & Casualty Co. of New York v. Baker, 105 F.2d 578 (C.A.8); Chaffee, Federal Interpleader Since the Act of 1936, 49 Yale L.J., 377, 417 (1939-40).

■■ Nevertheless, an action such as this, in the nature of interpleader, may be brought and maintained under the express provisions of § 1335, Title 28 U.S. C.A.[1] Brisacher v. Tracy-Collins Trust Co., 277 F.2d 519 (C.A.10); Standard Surety & Casualty Co. of New York, supra. In such a case the District Court possessing jurisdiction over the subject matter of the action may adjudicate the issues, and may grant appropriate relief under the Interpleader Act, even though the state court proceedings have progressed to the point that a lien has been obtained upon the chose in action which is the subject of the garnishment proceedings. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, affirming 63 F.2d 902 and National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212. Furthermore, since the issues in the garnishment proceedings are governed by state law, the District Court, acquiring jurisdiction of the subject matter, is required to give the same effect to the garnishment proceedings as would be given by the state court in question, here, the Missouri court. Griffin v. McCoach, 313 U.S. 498, 61 S.Ct.

[1]. The Federal Interpleader Act does not create a new statutory cause of action but implements the preexisting equitable jurisdiction over bills of interpleader and bills in the nature of interpleader. Mallers v. Equitable Life Assur. Soc. of the United States (C.A.7) 87 F.2d 233 l. c. 235, cert. denied, 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343, 3 Moore, Federal Practice 3004. 5 Barron and Holtzoff, Federal Practice and Procedure 323. Once the contrary was believed to be true. Eagle, Star & British Dominions v. Tadlock (S.D.Cal.), 14 F.Supp. 933, l. c. 940. The history of the Act is outlined and explained in Klabor v. Maryland Casualty Co. (C.A.8), 69 F.2d 934, 106 A.L.R. 617, decided before the passage of the amended Act of 1936 authorizing bills in the nature of interpleader.

1023, 85 L.Ed. 1481; Sanders v. Armour Fertilizer Works, supra.

But the mere fact that this Court possesses jurisdiction over the subject matter of an equitable action of interpleader does not require that the Court should exercise that jurisdiction. For example, some courts have, in their discretion, dismissed federal interpleader actions for want of equity because an adequate remedy at law existed, even though the required jurisdictional facts were proven. Mutual Life Ins. Co. of New York v. Egeline, 30 F.Supp. 738 (N.D.Cal.); Flanagan v. Marvel, 94 F. Supp. 145 (D.Minn.). In this connection the defendant Elno Shawver of Missouri urges that the Court should, in its discretion, decline to exercise jurisdiction because the Missouri court has acquired prior jurisdiction and has rendered a "final judgment" entitled to full faith and credit, "thereby obviating vexatious claims in other states." In essence, this argument appeals to the discretion of this Court to accord comity and priority to the Missouri Courts; and it also asserts that Prudential's remedy at law is adequate because of the full faith and credit to which the garnishment proceedings are said to be entitled as a matter of law.

The Federal Courts should, and do, wherever possible without injury to one of the parties, respect the priority and competency of state courts to adjudicate matters within their jurisdiction involving the application of state law. The provisions in the order of this Court in this case modifying the restraining order to permit the garnishment proceedings to be prosecuted to a conclusion are in keeping with that rule. It is not necessary that there be a specific precedent for a court of equity to mold a judgment in a new form to serve the interests of justice. If it were, the form would not be new, and the law of equity could not grow in the area of relief obtainable. However, there is recent and respectable authority for the action taken in this case. Hickok v. Gulf Oil Corp., 265 F.2d 798 (C.A.6), affirming Gulf Oil Corp. v. Eisenhour, D.C., 158 F.Supp.

663; Globe & Rutgers Fire Ins. Co. v. Viele, 110 F.Supp. 889 (D.Neb.).

On the claim, that the action ought to be dismissed because the Missouri garnishment judgment is entitled to full faith and credit elsewhere, it cannot be said that the Missouri judgment in the garnishment proceedings will be entitled to full faith and credit in subsequent litigation which may occur elsewhere between the non-resident judgment debtor and the garnishee. In order for a judgment in a garnishment proceeding to be entitled to full faith and credit in subsequent actions between the garnishee and judgment debtor, it must be shown that the judgment debtor was given timely notice and opportunity to defend. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023; Annotation 166 A.L.R. 272, l.c. 298. Whether such timely notice and opportunity to defend have been given are matters extrinsic of the judgment, which may be litigated in another forum by the judgment debtor and must be determined before the full faith and credit question is finally resolved. Under such circumstances, there is potential liability of the garnishee to further and other litigation which cannot be determined without resorting to extrinsic evidence on an issue not concluded by the state judgment in garnishment. Therefore, in this case, plaintiff's remedy at law is inadequate and the Interpleader Act has been properly invoked, if it has been timely invoked.

This brings us to the charge of laches. This Court would be justified in sustaining the motion to dismiss because of the delay in the filing of this action, if the delay was unreasonable under the circumstances, and there was injury to the opposite party and no excuse. But mere delay alone is not enough. Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409. l. c. 415.

On the other hand, the Court has the discretion to overrule the motion to dismiss under conditions which will best serve the interests of the administration of justice. In the case at bar, on

the pleadings and motions, in the absence of evidentiary showing of all the circumstances, unreasonableness and lack of excuse will not be presumed, where only delay and implied injury appear. The action of the Court today in modifying the restraining order may prevent injury to the defendant Elno Shawver. Dismissal on the ground of laches will not be ordered.

But this does not mean the plaintiff in this case is exonerated from the charges of laches made by the defendant Elno Shawver. This charge of laches will be considered later in connection with plaintiff's claims on the merits, and for costs and attorney's fees sought in the prayer of the complaint.

Without intent to encourage insurers to try their luck first in the State Court and then to resort to the Federal Court, the Court believes that the interests of equity, justice and comity will be served best by modifying the restraining order so as to permit the State Court proceedings to be prosecuted to a conclusion. In the meantime, further action in this cause will be stayed.

Finally, the claim of impropriety of granting the restraining order *ex parte* must be considered.

It is true that this order was granted without notice or hearing. However, the order contained this provision:

" * * *  this order to be returnable and reconsidered upon appropriate pleading herein."

■ It is also true that none of the findings and provisions for early hearing of F.R.Civ.P. Rule 65(b), 28 U.S.C.A. were contained in the order. But paragraph (e) of Rule 65 provides expressly that the Rule is not applicable to preliminary injunctions in actions of interpleader or in the nature of interpleader under § 2361, Title 28 U.S.C.A. This

does not mean, though, that the practice under Section 2361 should be without any notice and without provision for hearing in all cases.[2] The practice in actions under the Interpleader Act is still governed by principles of equity practice.

The process and orders under Section 2361 may run throughout the nation. Therefore, the opportunities to give notice and to hold hearings prior to issuance of a restraining order are more restricted by considerations of space and time. But this does not support the view that opportunity for notice and hearing prior to issuance of a restraining order or a preliminary injunction should be denied in all cases. Here the court of equity should exercise a judicial discretion and restraint. In some cases a restraining order issued *ex parte* may unknowingly cause uncompensable or irreparable injury to a defendant. For example, a defendant may be enjoined from prosecuting or taking an appeal in a state action under circumstances where the right of appeal is lost by passage of time. If in this case the defendant Elno Shawver of Missouri were the appellant instead of the respondent in the appeal from the Missouri judgment, the restraining order might have wrongfully caused loss of the right of appeal if improvidently issued. Notice and a hearing might avoid such a wrong.

■ While Rule 65 is not applicable to statutory interpleader actions, such as this, it embodies principles of equity practice which should be given consideration in issuing restraining orders under Section 2361 in interpleader actions, as the circumstances and the time and space considerations of the statutory interpleader action permit.

In this case no injury to the defendant Elno Shawver has resulted from the issuance of the restraining order. The provision in the Court's order for recon-

2. The form books are not of much help on the question of making provisions for notice and hearing in the temporary restraining order granted *ex parte* under the Interpleader Act or under the analogous Rule 22, F.R.Civ.P. 1 Nichols, Cyclopedia of Federal Procedure, §§ 31.01–31.20, especially § 31.18; 3 West's Federal Forms, §§ 3001–14, especially 3013; 5 Barron, Federal Practice and Procedure, § 3715.

sideration of its issuance after service of process proved to be a sufficient safeguard against the failure to give notice. This may not be true in all cases, however. Generally, discretion should be exercised in dispensing with all provisions for notice in issuing restraining orders under Section 2361.

██ Because the Court had jurisdiction and discretion to act *ex parte* in issuing the restraining order; and because that jurisdiction was exercised within the limits of judicial discretion in this case, the assignment that the restraining order was improper and unlawful because of lack of notice prior to its issuance, is overruled.

The motions to dismiss and to dissolve the temporary restraining order are overruled, and an order modifying the restraining order and staying this action in accordance with the foregoing memorandum is made this 23d day of February 1962.