**NEW JERSEY SPORTS PRODUCTIONS, INC., d/b/a Main Events, Plaintiff,**

v.

**DON KING PRODUCTIONS, INC., Oliver McCall, Jimmy Adams, Time Warner Entertainment Co, L.P., Nevada Athletic Commission, a division of The Nevada Department of Labor and Industry, and John Does 1–5, Defendants.**

No. 97–CIV–1175 (WGB).

United States District Court,
D. New Jersey.

July 21, 1998.

Patrick C. English, Dines & English, Clifton, NJ, for New Jersey Sports Productions, Inc.

Pamela Labaj, Curtis, Mallet–Prevost, Colt & Mosle, Newark, NJ, for Don King Productions, Inc.

Andrew Muscato, Whitman Breed Abbott & Morgan, Newark, NJ, Eckley M. Keach, Goodman, Chesnoff & Keach, Las Vegas, NV, for Oliver McCall.

*OPINION*

BASSLER, District Judge.

On September 18, 1997 this Court **granted in part** and **denied in part** the motion of Plaintiff, New Jersey Sports Productions, Inc, d/b/a Main Events ("Main Events"), which sought: (1) further injunctive relief in the form of a clarification of the injunction ordered by the Court on April 28, 1997 ("April Injunction"); (2) a finding that Oliver McCall and his attorney, Eckley Keach, Esq., are in contempt for violating the April Injunction; and (3) the imposition of sanctions based on the finding of contempt. This Opinion sets forth the basis for the Court's September 18, 1997 Order.

## I. BACKGROUND

The events leading up to this dispute have been fully discussed in the Court's Opinion dated April 28, 1997 ("April Opinion"). Familiarity with that Opinion is assumed. The central events of this lawsuit concern a heavyweight title bout between Mr. McCall and Lennox Lewis that took place on February 7, 1997. Mr. McCall's purse for the fight was agreed to be $3,075,500.00. (Complaint Ex. B ¶ 2).

Main Events, the promoter of the bout, entered into two contracts with Mr. McCall and his manager, Defendant Jimmy Adams. The second contract was titled, "Official Boxing Contract, Nevada Athletic Commission" (the "NAC Contract"). (Complaint Ex. B ¶ 3).

Paragraph 3 of the NAC Contract provides, in relevant part:

[The parties agree] [t]hat the contest ... shall be conducted in all respects in conformity with the laws of the State of Nevada, and the rules and regulations adopted by the Nevada Athletic Commission, which are hereby made a part of this agree-

ment.... If the referee or the Nevada Athletic Commission shall decide that the Boxer and Manager, or either of them, did not enter into the contract in good faith; or the Boxer and Manager, or either of them, had any collusive understanding or agreement regarding the termination of the match other that the same should be an honest exhibition of skill on the part of the contestants, or that the Boxer is not honestly competing or did not give an honest exhibition of his skill, or is guilty of an act detrimental to the interest of boxing; it is agreed in any of such events that the Boxer shall not be entitled to the compensation above named, or any part thereof, unless so ordered by the Nevada Athletic Commission.

It is further agreed that the Promoter [Main Events] shall pay said compensation to the said Commission in the event the Commission shall so order upon any of the above-mentioned grounds. The Commission shall thereupon, in its discretion, make such disposition of said purse as it deems to the best interest of legitimate sport and may forfeit to the Nevada Athletic Commission all or any part of the compensation or order the same or any portion thereof paid to the Boxer. All parties hereto agree to accept and be bound by the decision of the said Commission and such decision shall be final and conclusive of the rights of the parties hereto.

According to the Complaint, Mr. McCall simply stopped fighting after the third round of the bout. (Complaint ¶ 48). As a result, the referee stopped the bout fifty-five seconds into the fifth round. (*Id*). Main Events alleges that Mr. McCall's actions breached both contracts. (Complaint Count II).

On February 7, 1997, shortly after the bout was stopped, the Nevada Athletic Commission ("NAC") notified Main Events that Mr. McCall breached the terms of his agreements and that he should not be paid the approximately $3 million provided for in the contracts between the parties. On February 18, 1997, the Nevada Attorney General's Office initiated a disciplinary action before the NAC seeking the imposition of fines totaling

ten percent of Mr. McCall's purse and the revocation of Mr. McCall's Nevada boxing license. (April Opinion at 6).

On April 1, 1997, approximately 20 days after the Complaint in this action had been filed, Mr. McCall and the Nevada Attorney General's Office entered into a settlement agreement ("Settlement"), a copy of which is attached to the Certification of Eckley M. Keach at Exhibit 3, filed April 18, 1997. According to the terms of the Agreed Order contained within the Settlement ("Settlement Order"), the NAC would order the Plaintiff to turn over the purse to it. Specifically, the Settlement Order requires Main Events to "pay forthwith the undistributed portion of the purse of Oliver McCall ... to the [NAC]." (Settlement at 6). According to the Settlement Order, after the NAC receives the purse, it "shall, thereupon, in its discretion, make such a disposition of said undistributed portion of the purse of Oliver McCall ... as it deems in the best interest of legitimate sport." (*Id.* at 7). The Attorney General also agreed to recommend that the NAC order that Mr. McCall receive the remaining monies due him, less and except the $250,000 fine, as per the WBC and NAC contracts. (*Id.* ¶ 10, at 4). The Settlement must be approved by the NAC before it becomes final. (*Id.* ¶ 9, at 3–4).

According to Main Events' Complaint, a number of individuals and entities were possible claimants to the disputed purse. (Complaint ¶ 53). Therefore, Main Events sought to use the device known as an interpleader, through which it would deposit the purse into the Court registry and let the Court sort out claims to the purse.[1] On April 28, 1997, the Court granted Plaintiff's request to deposit the purse into the Court's registry and permitted the interpleader action to go forward. In the April Opinion, the Court found that the NAC was not the appropriate forum to determine the disposition of the purse because the NAC did not have jurisdiction over all the claimants nor the authority to adjudicate all the issues. (April Opinion at 18–20). That same date, this Court also issued the April Injunction, which enjoined "all claim-

ants ... from initiating or making claims in any State Court, or administrative agency, or in any United States District Court, except this interpleader until further Order of the Court, except that disciplinary proceedings against Oliver McCall pending before the Nevada Athletic Commission may proceed." The purpose of the injunction was to "to restrain any other actions affecting the funds involved in this interpleader (except a disciplinary action brought by the [NAC] against [Mr. McCall] )." (April Opinion at 29). Mr. McCall has appealed the Court's rulings to the Third Circuit.

On July 1, 1997, Mr. McCall through his counsel, Mr. Keach, sought to get the NAC to approve a revised version of the Settlement, which the parties had signed on June 21, 1997 ("June Settlement"). (Cert. of Eckley M. Keach, filed August 29, 1997, Ex. B, at 5). The June Settlement contained a similar provision to the original Settlement regarding the disposition of the purse: if the NAC approves the June Settlement, the NAC will order Main Events to turn over the purse to it so that it can determine who is entitled to the purse. (*Id.* at 6–7). In response, Main Events filed a motion for further injunctive relief in the form of a clarification of the April Injunction. Specifically, it seeks to enjoin defendants from entering into any stipulations, stipulated Order, or participating in any proceedings before the NAC or elsewhere that may affect the purse. Main Events also moved this Court for a finding that Mr. McCall and Mr. Keach, as a result of their efforts on July 1, 1997, are in contempt of the April Injunction. Finally, Main events moved for appropriate sanctions based on the alleged contempt.

## II. DISCUSSION

### A. Clarification of the Injunction

Although not raised by the parties in their papers, the Court pauses to determine whether it retains jurisdiction to clarify the April Injunction in light of Mr. McCall's appeal of that Order. This Court concludes

---

1. One possible claimant, the NAC, was dropped from the case on April 2, 1997 apparently on the understanding that the NAC did not intend to make a claim on Mr. McCall's purse.

that it has the authority to clarify its original Order in order to effectuate its purpose.

Under Fed.R.Civ.P. 65, when a Court issues an "order involving injunctive relief ... prior to the entry of a final judgment[,] ... [a]n appeal from the grant or denial of [the] preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." 11A Charles A. Wright et al., Federal Practice and Procedure, Civil § 2962, at 410, 438 (2d ed.1995) (hereinafter "Wright and Miller") (footnote omitted); see also Ex parte National Enameling & Stamping Co., 201 U.S. 156, 162, 26 S.Ct. 404, 50 L.Ed. 707 (1906) (stating, with respect to a predecessor statute that permitted appeals of certain interlocutory orders: "Obviously, that which is contemplated is a review of the interlocutory order and of that only...." The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered); Plaquemines Parish Comm'n Council v. United States, 416 F.2d 952, 953 (5th Cir.1969) ("The district court did not lose jurisdiction of the parties merely because an appeal was pending from the desegregation order. Appellants cite no school case authority to support their view that the district court lacks jurisdiction to promulgate additional orders to maintain the status quo and to insure the enforcement of the previous orders. Generally, a district court retains jurisdiction to enforce its prior orders, and this is particularly true with respect to desegregation cases.") (citations omitted) (emphasis added).

Technically, Rule 65 does not apply to statutory interpleader actions. Fed.R.Civ.P. 65(e). However, "[a] request for an order under [the statutory interpleader provision, 28 U.S.C. § 2361] follows the normal procedure for seeking injunctive relief." 7 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Civil § 1717, at 620.

> While Rule 65 is not applicable to statutory interpleader actions ..., it embodies principles of equity practice which should be given consideration in issuing restraining orders under § 2361 in interpleader actions, as the circumstances and the time

and space considerations of the statutory interpleader action permit.

Prudential Ins. Co. of Am. v. Shawver, 208 F.Supp. 464, 470 (W.D.Mo.1962) (quoted in 11A Wright & Miller, Civil § 2958, at 363); see also Holcomb v. Aetna Life Ins. Co., 228 F.2d 75, 81–82 (10th Cir.1955) ("A proceeding in the nature of interpleader is one in equity and is governed by equitable principles.") (citing Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939)).

■ As for the propriety of modifying an injunction, the district court must have "wide discretion." System Fed'n No. 91, Ry. Employees' Dep't, AFL–CIO v. Wright, 364 U.S. 642, 648, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); accord 11A Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Civil § 2961, at 392–93 (footnote omitted). Furthermore, "[i]nasmuch as an injunctive decree is drafted in light of what the court believes will be the future course of events, a court must continually be willing to redraft the order at the request of the party who obtained equitable relief in order to insure that the decree accomplishes its intended result." 11A Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Civil § 2961, at 393 (emphasis added) (footnote omitted); accord United States v. United Shoe Mach. Corp., 391 U.S. 244, 252, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968) (holding that if the District Court's injunctive decree did not accomplish its intended goals, "the District Court should modify the decree so as to achieve the required result with all appropriate expedition"); see also System Fed'n No. 91, Ry. Employees' Dep't, 364 U.S. at 648, 81 S.Ct. 368 ("The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief."); Exxon Corp. v. Texas Motor Exchange of Houston, Inc., 628 F.2d 500, 503 (5th Cir.1980) ("The holding in United Shoe Machinery indicates that an injunction may be modified to impose more stringent requirements on the defendant when 'the original purposes of the injunction are not being fulfilled in any material respect.' ") (citation omitted).

■ At the time of the April hearing, the Court was aware of the proposed Settlement.

The Settlement had been filed with the Court on April 18, 1997 as part of the certification of Eckley M. Keach, Esq. The Court concluded that the NAC was not the proper forum for adjudicating the disposition of the purse. (April Opinion at 18–20). The purpose of the April Injunction was "to restrain any other actions affecting the funds involved in this interpleader (except a disciplinary action brought by the [NAC] against [Mr. McCall])." (April Opinion at 29). Therefore, it was designed to prevent exactly what Main Events is now seeking to prevent.

The Court did exclude a disciplinary hearing of the NAC from the scope of the injunction. The Court did so for two reasons. First, Main Events never sought to interfere with a disciplinary action. Second, the Court respects the authority of the NAC and has no business interfering with the NAC's ability to discipline, impose fines, or otherwise sanction parties under its legitimate jurisdiction. The NAC cannot, however, determine how the purse, which is being held by this Court, should be distributed. Such an action would destroy the whole purpose of the interpleader action.

■ The Court finds that it retains jurisdiction to modify and clarify the existing injunction. The Court must be able to protect the *res* over which it has control even though Mr. McCall has filed a notice of appeal. To allow a defendant to bring an appeal and then flout with impunity the purposes of the injunction by exploiting a potential ambiguity in the Order would make a mockery of the judicial process. *See Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir.1985) (quoting *Berry v. Midtown Serv. Corp.,* 104 F.2d 107, 110 (2d Cir.1939) (quoting *Lineker v. Dillon,* 275 F. 460 (N.D.Cal.1921))). In order to insure that the April Injunction accomplishes the intended result, and to protect the Court's jurisdiction over the *res,* the Court must modify the April Injunction as requested. Therefore, Main Events' request to modify the April Injunction is **granted.**

### B. Contempt and Sanctions

Main Events also moves for this Court to find that Mr. McCall and his attorney, Mr. Keach, violated the April Injunction as a result of their actions on July 1, 1997, and to cite them for contempt and impose sanctions due to this violation. Plaintiff argues that the clear purpose of the April Injunction was to prevent any action affecting the *res.* Plaintiffs call the attempt to have the June Settlement approved "as blatant a disregard for the Order of the Court as will ever be seen." (Pl. Moving Mem. of Law at 6). The Court disagrees.

■ To show civil contempt, Main Events must establish that: (1) a valid court order existed; (2) it required defendant to do certain things; (3) the defendant knew of the order; and (4) the defendant disobeyed the order. *See Harris v. City of Philadelphia,* 47 F.3d 1311, 1326 (3d Cir.1995); *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir.1990). "The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by 'clear and convincing evidence,' and where there is ground to doubt the wrongfulness of the conduct, he should not be adjudged in contempt." *Quinter v. Volkswagen of Am.,* 676 F.2d 969, 974 (3d Cir.1982) (quoting *Fox v. Capital Co.,* 96 F.2d 684, 686 (3d Cir.1938)). The clear and convincing standard of proof requires "evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue.'" *Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (quoting *In re Jobes,* 108 N.J. 394, 407–08, 529 A.2d 434 (1987)). Ambiguities in the order should be resolved in favor of the party charged with contempt. *Harris,* 47 F.3d at 1326 (citation omitted).

■ Main Events has not shouldered its burden of proof. The April Opinion and April Injunction create sufficient ambiguity such that a finding of contempt is inappropriate. While the purpose of the injunction was to prevent any entity, including the NAC, from taking action that affected the *res,* lan-

guage in the April Opinion does suggest otherwise. The Court wrote:

> Main Events has not sought, on this motion, an Order enjoining the Nevada disciplinary action from proceeding. Rather, it takes the position that, should the NAC Order the funds be transferred to it pursuant to the NAC contract, that the NAC will become another 'claimant' on the *res*.

(April Opinion at 20). One could reasonably infer from this language that the Court contemplated the possibility of the NAC issuing the Settlement Order and did not attempt to enjoin efforts to have that Order approved. While Mr. McCall and Mr. Keach should definitely have sought permission from this Court before seeking approval of the June Settlement (in order to ensure compliance with the April Injunction), the Court is not convinced that contempt is warranted.

Main Events' request for modification and clarification of the April Injunction provides further justification for denying its motion for contempt. In *American Greetings Corp. v. Dan–Dee Imports, Inc.*, 619 F.Supp. 1204, 1217 (D.N.J.1985), the court decided not to hold a party in contempt of its order in a case in which the opposing party sought expansion and clarification of the existing order. The court held that "it would be inappropriate for the court to hold defendants in contempt of an order which the plaintiffs themselves concede requires expansion and clarification." *Id.* In light of the potential ambiguity as to whether the Court was implicitly permitting the NAC to issue an Order requiring Main Events to turn over the purse to them, and since Main Events sought an expansion of the injunction, Main Event's motion for contempt is **denied**. Main Event's motion for sanctions, therefore, is also **denied**.