LIBERTY NAT. LIFE INS. CO.

v.

BROWN et al.

Civ. No. 292-E

United States District Court,
M. D. Alabama, E. D.

Jan. 25, 1954.

Denson & Denson, Opelika, Ala., for plaintiff Liberty Nat. Life Ins. Co.

Walker, & Walker, Opelika, Ala., and Charles S. Moon, LaFayette, Ala., for Cordie Mae Brown, as administratrix of Lewis Brown, deceased.

McKee & Maye, Opelika, Ala., and Morgan S. Cantey, West Point, Ga., for Henry M. Booker, as administrator of the Estate of Mary Jim Brown, deceased.

RIVES, Circuit Judge.

The evidential facts, conclusions therefrom, and the conclusions of law are all so intermeshed that the Court will make no effort to state them separately.

The plaintiff filed its bill in the nature of interpleader invoking the jurisdiction of the Court under the provisions of 28 U.S.C.A. §§ 1335, 1397 and 2361, and and under Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; and deposited in court the sum of $6,500, the total amount due under two policies of life insurance issued on the life of Lewis Brown, now deceased, and in each of which Mary Jim Brown, also now deceased, was named as sole beneficiary. Lewis Brown and Mary Jim Brown were accidentally killed by drowning on or about November 29, 1952. They were husband and wife, left no surviving child, and the personal representative of each of them claims the proceeds of the insurance policies.

In accordance with the stipulation and agreement of the parties, the insurance company plaintiff was dismissed as a party litigant with its reasonable costs and an attorney's fee in the amount of $400, to be paid from the policy funds in the hands of the Court.

The personal representatives of Mary Jim Brown demanded a trial by jury of all issues arising in the case, and the personal representative of Lewis Brown resisted that demand and moved to transfer the cause to the non-jury docket. Upon consideration, the Court concluded that, arising as the issues did in an interpleader suit, there was no constitutional or mandatory legal right to a jury trial. At the time of that ruling, the only authorities cited by either of the parties were Liberty Oil Co. v. Condon Nat. Bank, 260 U.S. 235, 244, 43 S.Ct. 118, 67 L.Ed. 232; Bynum v. Prudential Life Ins. Co., D.C.S.C., 7 F.R.D. 585; and 2 Barron and Holtzoff Federal Practice and Procedure, Section 555, p. 138. The question is not free from doubt. The language of the Supreme Court in Liberty Oil Co. v. Condon Nat. Bank, supra, is dictum because, as appears on pages 239 and 240 of 260 U.S. on pages 119, 120 of 43 S.Ct. of the report, a jury had been waived in that case and the question to be decided was the proper mode of review, whether by appeal in equity or by writ of error at law. Professor Moore states the rule differently, "If legal issues arise, a party can obtain a jury by making a demand pursuant to Rule 38." 3 Moore's Federal Practice, 2d Ed., p. 3013, Sec. 22.04, n. 20. That result is also indicated in a law review article by Professor Chafee in 30 Yale Law Journal, pp. 814, 815, et seq. The reasoning seems to be that the equitable remedy in an interpleader suit is really in the stakeholder; that such cases are tried in two successive stages, the first to absolve the stakeholder and the second to decide which of the claimants shall prevail; that, historically, interpleader has not been confined solely to equity, having its origin in the old common law writ of interpleader but having been developed in equity practice, see 3 Moore's Federal Practice, 2d Ed., p. 3005, Sec. 22.03; 48 C.J.S., Interpleader, § 1; that after the order of interpleader, when the remedy of the stakeholder has been disposed of, the basic nature of the issue between the claimants should control the right to trial by jury, see 5 Moore's Federal Practice, 2d Ed., p. 148, Sec. 38.16.

It now seems to the Court that the language of the Supreme Court in Liberty Oil Co. v. Condon Nat. Bank, supra, particularly at page 244 of 260 U.S. at page 121 of 43 S.Ct. of the opinion, though dictum, was entirely sound and that the Court had a discretion to

dispose of the controversy between the claimants by any method of trial which seemed best in the particular case. See authorities collected in 30 Am.Jur., Interpleader, Sec. 25; 48 C.J.S., Interpleader, § 43. If in the light of reflection that discretion were to be exercised anew, the Court would be inclined to grant a trial by jury since the issues between the claimants were legal, were in effect the same as the issues would have been between either of the claimants and the insurance company, and all that the Court is doing is determining the rights of both claimants in one trial. However, the testimony having been heard by the Court without a jury and the cause now being submitted for final decree, the Court does not consider its ruling such an abuse of discretion that it should be set aside with the resultant retaking of the evidence before a jury. The Court, therefore, somewhat reluctantly proceeds to a decision of the issues and makes the following findings of fact and conclusions of law.

■ At the time the policies of insurance were issued, both the insured and the beneficiary resided in the State of Georgia. The evidence is not entirely clear, but the Court concludes that the beneficiary wife was the more responsible of the two parties; that the policies of insurance were issued at her instance; and that she paid the premiums thereon from her own funds. In the opinion of the Court, however, the contracts so purchased are to be enforced according to their terms and the beneficiary wife and her estate are bound by the provisions in the policies of insurance. The $5,000 policy provided, "If no designated beneficiary survives the Insured, and it is not otherwise provided, the proceeds of this Policy shall be payable in one sum to the executors or administrators of the Insured." The $1,500 policy provided, "If the beneficiary dies before the Insured the Estate of the Insured shall then automatically become the beneficiary thereof."

■ About July, 1952, Lewis Brown moved across the State line into Alabama and secured employment in that State, where he then resided continuously until his death. About September, 1952, his wife, Mary Jim Brown, followed him, though leaving part of her clothing and personal effects in Georgia. The parties had been married for about ten years, separated off and on and living together only about six years out of the ten. The Court concludes, however, that at the time of the fatal accident both the husband and the wife resided in Alabama.

It is uncertain whether death of either or both of the parties occurred in that part of the waters which lie in Alabama or in that part which lie in Georgia. Both parties were last seen alive on the Alabama bank, their bodies were recovered in Alabama waters, and the overturned boat was also recovered on the Alabama side. If the question were material, and in the opinion of the Court it is not, the Court would find that the death of both parties occurred in Alabama.

In the opinion of the Court, this case should be determined in accordance with the Code of Alabama 1940, Title 16, Section 37, reading as follows:

"Insurance policies.—Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary."

■ In the opinion of the Court, before it can decide in favor of the personal representative of the deceased beneficiary it must be reasonably satisfied from the evidence that she survived the insured. See In re Cruson's Estate, 189 Or. 537, 221 P.2d 892, 20 A.L.R.2d 219, Annotation 20 A.L.R.2d 235, et seq. The Court is not reasonably satisfied which, if either, of the parties survived. In the opinion of the Court, no reasonable inference as to which survived is to be drawn from the evidence. The wife's body was recovered the day after the

tragic accident, as was the body of a Mrs. Barwick, another occupant of the boat. The husband's body was not re-covered until about sixteen days later when it was in a state of decomposition. There is evidence that both the husband and the wife were good swimmers and in-ferences that they undertook to swim ashore. The wife's body was recovered near a house on shore which had been lighted on the night of the accident. The husband's body when recovered was pressing against the bank some distance away with his shoes off, his pants un-zipped and his belt unfastened. The overturned boat was found about mid-way between the two bodies. There is evidence that the boat had tar on its bottom and that there was tar on the wife's hands and on parts of her body, indicating that she had clung to the over-turned boat. This evidence, however, af-fords no basis of comparison as to the husband's body since his body was so decomposed that it could not be determin-ed whether his hands or body had had tar on them. There was considerable evidence as to the comparative state of rigor mortis effecting the body of the wife and that of Mrs. Barwick, but this evidence is without value as to what the state of the husband's body was at that time, his body not having been recovered until many days later. The Court also concludes from the testimony of Mr. Seth Copeland, the undertaker, that this type of evidence was of no value in deter-mining even whether the beneficiary or Mrs. Barwick died first. The most tangi-ble evidence was an affidavit from the coroner, Dr. Joe H. Liles, a chiropractor, that, according to the watches worn by Mary Jim Brown and Lewis Brown, she drowned at 7:05 p. m. and he drowned at 6:55 p. m.; and that "Other physical as-pects lead me to believe that he preceded her in death." This affidavit was intro-duced by way of impeachment of Dr. Liles who testified to the contrary on the trial, in effect stating that there was nothing to indicate which died first. His recollection may have been refreshed as to the time shown on the respective watches, though he continued positive that he was mistaken in his statement in the affidavit as to other physical aspects leading him to believe that the husband preceded the wife in death. There was no evidence to show that the watches were synchronized, that they were equal-ly water proof, that one of the watches may have been held out of the water for a longer time than the other, or that either the husband or the wife died at the same moment that his or her watch stopped. In the opinion of the Court, that evidence was not of sufficient value on which to base an inference. The evidence was in conflict as to whether any water ran out of the lungs of the deceased wife, but again there was nothing on which to base a comparison with the body of the de-ceased husband. The Court concludes, therefore, that there was no sufficient evidence to show that the insured and beneficiary died otherwise than simul-taneously, and that the proceeds of the policies should be distributed as if the in-sured had survived the beneficiary.

The Clerk will enroll the following judgment:

It is considered, ordered and adjudged by the Court that the costs of this cause shall first be paid out of the proceeds of the life insurance policies in the hands of the Clerk of this Court; and that Cordie Mae Brown, as Administratrix of the Estate of Lewis Brown, deceased, be, and she is hereby adjudged to be, entitled to the remainder of such proceeds; and that upon the final termination of this cause the Clerk of this Court shall pay over and deliver to the said Cordie Mae Brown, as Administratrix of the Estate of Lewis Brown, deceased, the remainder of the proceeds from such policies of in-surance. Before doing so, the Clerk shall await the determination of the par-ties as to whether there shall be any fur-ther proceedings by way of motion for new trial for rehearing or appeal, and, in the event of any such further proceed-ings, shall await the termination there-of before complying with this judgment.