PRESTON CORPORATION, Preston Public Service Corporation, Plaintiffs,

v.

Richard Aubrey RAESE, individually and/or in any fiduciary capacity, Jane Greer Kelly, individually and/or in any fiduciary capacity, Richard Greer Raese and John Reeves Raese, minors, individually and/or by their duly authorized representative, Preston County Supply Company, Preston County Light and Power Company, Preston Telephone Company, Defendants.

No. 776–F.

United States District Court
N. D. West Virginia,
Fairmont Division.

Nov. 13, 1964.

William H. Arkin, New York City, James T. Dailey, Jr., Kingwood, W. Va., for plaintiffs.

James M. Guiher, Clarksburg, W. Va., Steptoe & Johnson, Clarksburg, W. Va., on the brief, for defendants.

CHRISTIE, District Judge.

This is a diversity action in the nature of an interpleader brought under 28 U.S.C. §§ 1335, 1397 and 2361, and Rule 22(2) of the Federal Rules of Civil Procedure, and it is here on transfer, for the convenience of the parties, from the United States District Court for the Southern District of Florida. An appeal

taken by plaintiffs from the transfer was dismissed by the United States Court of Appeals for the Fourth Circuit on 7–27–64. Preston Corporation et al. v. Raese, 4 Cir., 335 F.2d 827.

It should be helpful to an understanding of this case to give as concisely as the facts will permit a narrative background of the positions of the parties adversary, the nature of their respective grievances, the relationship each bears to the other, and the methods each has employed to protect or vindicate his position.

The controversy giving rise to this litigation appears to have been initiated by Jane G. Kelly, as majority stockholder of Preston County Supply Company, a West Virginia corporation, on the 10th day of October, 1963, when she inaugurated a plan of reorganization which would encompass not only that company but also its subsidiary, Preston County Light and Power Company, likewise a West Virginia corporation. Under the plan of reorganization, the assets of these West Virginia companies were to be transferred to the Preston Public Service Corporation, a Delaware corporation, and in exchange therefor shares of Preston Public Service Corporation, constituting all of its outstanding stock, were to be issued to Preston Corporation, another Delaware corporation, and shares of Preston Corporation were then to be issued to the shareholders of Preston County Supply Company in exchange for their outstanding shares therein. Though not a party to the plan of reorganization, Preston Telephone Company, another West Virginia corporation and a wholly owned subsidiary of Preston County Light and Power Company, was made a party defendant to the interpleader and it is alleged therein that its assets were also transferred to Preston Public Service Corporation pursuant to the plan of reorganization. For brevity, Preston County Supply Company will hereinafter be referred to as "Supply Company"; Preston County Light and Power Company as "Power Company"; Preston Telephone Company as "Telephone Company"; Preston Corporation as "Preston"; and Preston Public Service Corporation as "Public Service."

At the inception of the plan of reorganization, the shareholders of record of Supply Company, Power Company, and Telephone Company and the extent of their respective holdings therein were as follows:

SUPPLY:

| | | |
|---|---|---|
| Jane G. Kelly, | 1,717 | shares |
| Richard Greer Raese, | 450 | " |
| John Reeves Raese, | 300 | " |
| Agnes J. Reeves Greer, | 3 | " |
| Richard Aubrey Raese, | 1 | " |
| Total, | 2,471 | shares |

POWER:

| | | |
|---|---|---|
| Preston County Supply Company, | 497 | shares |
| Agnes J. Reeves Greer, | 3 | " |
| Total, | 500 | shares |

TELEPHONE:

| | | |
|---|---|---|
| Preston County Light and Power Company, | 2,500 | shares |
| Total, | 2,500 | shares |

———◆———

A special meeting of the stockholders of Supply Company was called for 10–22–63 at Palm Beach, Florida, to consider adoption of the plan of reorganization,

notice of which reached the minority stockholders on 10–14–63. At this meeting, the plan was approved over the vote and objection of the minority stockholders, and they, through their attorney, on 10–31–63, notified the directors of Supply Company that they could not be required to accept, over their objections, shares of stock in Preston for their holdings in Supply Company, and called upon the directors to set aside and pay in cash to them the fair value of their respective shares in Supply Company. This protest and demand of the minority stockholders was ignored, and by letter of 11–19–63, H. B. Kelly, husband of Jane G. Kelly, as secretary of Supply Company, notified counsel for the minority stockholders that only stockholders of record 10–10–63 were entitled to vote at the special meeting of 10–22–63, and that the corporate records on such date did not disclose that Richard Greer Raese and John Reeves Raese were holders of any of Supply Company stock.[1] Simultaneously with the 10–22–63 special meeting of stockholders of Supply Company, a special meeting of stockholders of Power Company, called for the same time and place and for the same purpose, was held, and at which meeting Agnes J. Reeves Greer, as the minority stockholder in that company, voted and objected against approval of the plan of reorganization, but likewise to no avail. The record is silent as to whether or not stockholder approval of Telephone Company's coming into the plan was sought or obtained.

The plan of reorganization appears to have been consummated on or about November 1, 1963, under which the assets of Supply Company, Power Company, and Telephone Company were transferred to Public Service, and in exchange therefor Public Service issued all its outstanding stock to Preston. Thus, the shareholders of Preston and their holdings therein emerged as follows:

| | |
|---|---|
| Jane G. Kelly, | 6,937 shares |
| Jane G. Kelly, as Trustee for Richard Greer Raese, a minor, | 1,818 " |
| Jane G. Kelly, as Trustee for John Reeves Raese, a minor, | 1,212 " |
| Agnes J. Reeves Greer, | 12 " |
| Richard Aubrey Raese, | 4 " |
| Total, | 9,983 shares |

An aftermath of the consummation of the plan of reorganization, carried out over the protest of the minority stockholders, was the bringing of an action on 12–5–63 in the Circuit Court of Preston County, West Virginia, by Richard Greer Raese and John Reeves Raese, infants, by Richard A. Raese, their next friend and legal guardian; and Richard A. Raese, in his own right, as plaintiffs, against Supply Company, Power Company, Preston, Jane Greer Kelly, H. B. Kelly, and Agnes J. Reeves Greer, as defendants, in which it is, among other things, alleged:

(1) That Richard Greer Raese and John Reeves Raese are infants and that Richard A. Raese is their father and legally appointed, qualified and acting guardian under appointment as such by the County Court of Monongalia County, West Virginia, under date of 6–22–55;

(2) That the infants are the owners of 450 and 300 shares, respectively, of the shares of stock of Supply Company and that Richard A. Raese, their father, is the owner of 1 share of stock of that company; that the said father has the legal custody of said infants by virtue of a decree of the Circuit Court of Monongalia County, West Virginia, made 2–7–56; that the situs of their said shares of stock has at all times remained in West Virginia; that the certificates evidencing their existence have at all times remained in the custody of the registered

---

1. This position may be explained by the cancellation of the infants' share certificates and the re-issue thereof in the name of Jane G. Kelly, as their trustee, pursuant to Judge Holt's orders, later herein referred to.

owners in West Virginia; and that they have at all times since their births maintained their legal residence in Monongalia County, West Virginia;

(3) That Supply Company was organized as a West Virginia corporation in 1910, has its principal place of business and chief works at Cascade, in Preston County, West Virginia, owns real and personal property in Preston County, and is engaged in leasing real estate and doing business in Preston County; that Power Company was organized as a West Virginia corporation in 1923, operates electric and telephone distribution systems in Preston County, West Virginia, and in certain adjoining areas of Monongalia County, West Virginia, operates an appliance store in Preston County, and has its principal place of business in that county; that it has 500 shares of common stock outstanding, of which Supply Company owns 497 shares and of which Agnes J. Reeves Greer owns 3 shares, and that these 497 shares constitute by far the most valuable asset of Supply Company.

(4) That Preston was organized by Jane. G. Kelly under the laws of Delaware, is wholly controlled by her, and of which she is secretary and her husband, H. B. Kelly, is president; that it is not qualified or admitted to do business in West Virginia, owns no property in West Virginia, and that, though requested so to do, the Kellys have failed and refused to furnish plaintiffs with any worthwhile information as to the financial and business affairs of the Delaware corporation;

(5) That a study of the plan of reorganization has disclosed to the plaintiffs that, if it is carried out, Supply Company would be dissolved and liquidated and its shareholders would ultimately be issued stock in Preston, a Delaware corporation, in lieu of their holdings in Supply Company, a West Virginia corporation; that the plan of reorganization is a scheme grounded in the revenge and bitterness of Jane G. Kelly against her former husband, Richard A. Raese, and is designed to strengthen her position against the minority stockholders from exercising any effective voice in the management or control of Supply Company and its West Virginia subsidiaries, with the ultimate aim of freezing out the minority stockholders and confiscating their share interests in the West Virginia companies, to their great financial loss and disadvantage; that certain dividends declared and payable by Supply Company on shares of stock of the minority stockholders therein have never been delivered to them and that they should have judgment against Supply Company for the amount of such dividends; and

(6) That the arbitrary, vindictive and wrongful conduct of the majority stockholder, Jane G. Kelly, and her husband and associates, in putting into effect the plan of reorganization was tantamount to a conversion of plaintiffs' shares in Supply Company and as a result thereof, they are entitled to have paid them in cash the present fair value of their stock in Supply Company, to be arrived at as the Court shall so direct, and if this is not to be done, then in the alternative, the Court decree and carry out, by appropriate procedure, a dissolution and liquidation of Supply Company in accordance with West Virginia Code 31–1–81.

The Complaint concludes with an appropriate prayer for relief against all defendants (other than defendant, Agnes J. Reeves Greer), the principal items of relief sought being briefly as follows:

(a) That Richard Greer Raese, John Reeves Raese, and Richard A. Raese be adjudged the owners of 400 shares, 350 shares, and 1 share, respectively, of Supply Company common capital stock;

(b) That they recover judgments against defendants (other than Agnes J. Reeves Greer), or some of them, including in particular Supply Company, for sums equivalent to the present fair value of their respective shares of Supply Company stock;

(c) That as an alternative, the Court decree a dissolution and liquidation of Supply Company and Power Company, pursuant to West Virginia Code 31–1–81,

and that a receiver be appointed for that purpose;

(d) That appropriate injunctive relief be decreed them for the proper protection of their respective stock interests; and

(e) That they be awarded judgment against Supply Company for sums covering such dividends as have been declared and become payable on their shares of stock in said company, but which have not been paid or delivered to them.

Personal service of process was had in the state court action as to Supply Company, Power Company, Preston,[2] and Agnes J. Reeves Greer, and they have all entered appearances therein, but defendants, Jane G. Kelly and H. B. Kelly, being non-residents of West Virginia, were proceeded against by Order of Publication under West Virginia Code 56–3–23, 56–3–24, and the provisions of Rule 4 (e) (1) of West Virginia Rules of Civil Procedure and they have, as yet, made no appearances.

After the commencement of the state suit, to-wit, on 1–2–64, Preston and Public Service,[3] as Delaware corporations, plaintiffs, filed an action in the nature of an interpleader against Richard Aubrey Raese; Jane Greer Kelly; Richard Greer Raese, minor; John Reeves Raese, minor; Supply Company; Power Company; and Telephone Company, as defendants, under 28 U.S.C. §§ 1335, 1397 and 2361, and Rule 22(2) of the Federal Rules of Civil Procedure, in the United States District Court for the Southern District of Florida, in which it is alleged that interpleader-plaintiffs are Delaware corporations with their principal offices in Wilmington, that state, and that interpleader-defendant, Richard Aubrey Raese, is a resident of Monongalia County, West Virginia; that interpleader-defendants, Jane Greer Kelly and the two infants are residents of Florida;[4] and that interpleader-defendants, Supply Company, Power Company, and Telephone Company are all West Virginia corporations with their principal offices in Preston County, West Virginia.

Process issued upon the Interpleader Complaint was effected upon defendants, Richard Aubrey Raese; Richard Greer Raese, minor; and John Reeves Raese, minor, in the state of West Virginia; upon defendants, Jane Greer Kelly, Supply Company, Power Company, and Telephone Company, in the state of Florida.[4a]

The Interpleader Complaint sets up as the property in controversy 3,034 shares of Preston and dividends paid by Supply Company in the sum of $2,253.00; that of the 3,034 shares of Preston, 3,030 or the cash value thereof are adversely claimed by both defendants, Jane Greer Kelly as trustee of the minors and Richard Aubrey Raese as their guardian; 4 shares or the cash value thereof are adversely claimed or threatened to be claimed by both defendants, Jane Greer Kelly and Richard Aubrey Raese, in their in-

---

2. Personal service was had on Preston by virtue of West Virginia Code 31–1–71, since it was a party to the reorganization agreement to be performed in West Virginia. This statute was applied and upheld in State ex rel. Coral Pools, Inc. v. Knapp, (W.Va.) 131 S.E.2d 81.

3. Public Service was not initially made a party to the state court action, apparently because it was not a party to the reorganization agreement and was not then admitted to do business in West Virginia. However, it was later so admitted and by an amendatory order of the state court of 3–24–64, it was brought in as a defendant and served through the State Auditor.

4. The infants vigorously deny that they are residents of Florida. They maintain that they have remained residents of West Virginia since their births and that their residence in West Virginia was judicially determined to be such by the Circuit Court of Monongalia County, West Virginia, in an habeas corpus action, on 12–6–55.

4a. Service on these West Virginia corporations was made on Naomi Weaver, Asst. Sec., at 324 Royal Palm Way, Palm Beach, Florida. The record discloses that this was the address of Mrs. Kelly's Florida lawyer before the United States District Court there. Record indisputably establishes the principal offices and places of business of these corporations to be in West Virginia.

dividual capacities; and that the dividends are adversely claimed or threatened to be claimed by both defendants, Jane Greer Kelly and Richard Aubrey Raese, in their individual and fiduciary capacities, and by Preston, as transferee of stock of Supply Company.[4b]

Preston, as one of the plaintiffs in the Interpleader Complaint, goes on to allege various and sundry tortious acts and conducts on the part of Richard Aubrey Raese against it, Supply Company, Power Company, and Telephone Company, resulting in damages to it in the amount of $743,587.00, and praying that judgment be rendered by this court in its favor against the said Richard Aubrey Raese for said amount, together with cost and reasonable attorney fees.

The corporate defendants and defendant, Jane Greer Kelly, answered admitting all the allegations of the Bill of Interpleader. Additionally, Jane Greer Kelly, individually and as guardian and custodian of the minors, filed a Cross-Claim seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, as follows:

FIRST: Declaring that the effect of certain judgments rendered by the Eleventh Judicial Circuit Court of Florida on 2–19–57, 5–3–57, 2–19–60, and 12–28–60, completely and conclusively establishes her as the lawful custodian and guardian of the persons and the estates of the defendant minors;

SECOND: Declaring that the effect of said judgments of said Florida state court operates as a complete and conclusive bar against the assertion by defendant, Richard Aubrey Raese, of any right, title, claim, or interest as custodian and/or guardian of said defendant minors, in the properties or monies which are the subject-matter of this cause;

THIRD: Declaring that she, as trustee of minors, is entitled to their stock certificates for their shares of stock in Preston, issued pursuant to the plan of reorganization.

FOURTH: Declaring that certificates of Preston issued to Richard Aubrey Raese, pursuant to said plan of reorganization, for 4 shares of stock therein, be held to satisfy any judgment entered for her against defendant, Richard Aubrey Raese; and

FIFTH: Demanding that judgment be entered for her against defendant, Richard Aubrey Raese, in the amount of $68,000.00, together with cost and reasonable attorney fees.

This Cross-Claim of defendant, Jane Greer Kelly, concludes with a demand for "trial by jury." The record before this Court does not indicate whether any process was ever issued thereon.

Such proceedings were had upon the Bill of Interpleader, the answers thereto, and Cross-Claim that a temporary restraining Order was issued by the Federal District Court of Florida against further prosecution of the state court suit in Preston County, West Virginia. Thereupon defendants, Richard Greer Raese and John Reeves Raese, infants, by Richard Aubrey Raese, their legal guardian, and Richard Aubrey Raese, individualy, filed joint and several Motions in the Federal District Court of Florida to dismiss the Interpleader Complaint and dissolve the injunction, and in the alternative, to strike and transfer the proceedings to the United States District Court for the Northern District of West Virginia, assigning as grounds lack of jurisdiction of subject-matter, lack of jurisdiction over persons of interpleader-defendants, lack of proper venue, want of good faith on part of interpleader-plaintiffs, collusion on the part of interpleader-plaintiffs with Jane Greer Kelly and H. B. Kelly, unclean hands, lack of equity, and failure to state a claim upon which relief could be granted.

4b. Raeses make no adverse claim to these Preston shares, contending that they are the fruits of the illegal reorganization; that they are merely trying to protect their holdings in Supply Company, not desiring or seeking to acquire any shares in Preston.

Hearings were had pursuant to this Motion and the Federal District Court of Florida on 3–5–64, dissolved the injunction and on an *ore tenus* motion of plaintiffs, granted them ten days from 3–2–64 within which to file an amended complaint. No amended complaint being filed, the Court by Order of 3–31–64, granted interpleader-defendants' Motion to transfer the proceedings to the United States District Court for the Northern District of West Virginia. If the Motion to dismiss is sustained, then all other matters involved in the Bill of Interpleader and the Cross-Claim become academic insofar as this Court is concerned.

This leads us to a divorce suit instituted by Jane G. Raese (now Kelly) against Richard A. Raese in the Eleventh Judicial Circuit Court of Florida, presided over by one George E. Holt, in which a decree of divorce was granted and a settlement of property and child custody was approved on 5–4–55. Under the decree and settlement agreement, the father was given the sole custody of the minor children with certain visitation rights to the mother. The mother was then maintaining, and has since maintained, her residence in Florida, and the father was then maintaining, and has since maintained, his residence in West Virginia. A few months later, the mother brought and prosecuted an habeas corpus proceeding against her ex-husband in the Circuit Court of Monongalia County, West Virginia, the object of which was to obtain custody of the children. The Circuit Court decided the case against her on 2–7–56 from which she sought and was refused an appeal by the West Virginia Supreme Court of Appeals.

Thereupon, the mother secured certain *ex parte* orders from Judge Holt of the Florida State Court, as follows:

2–19–57: Putting sole custody of minor children in mother, the father to have certain visitation rights to be determined by the Court;

5–3–57: Requiring father to turn over all stocks and securities of minors including their stock in Preston County Supply Company to mother as their natural guardian and vesting in her all voting rights thereto or therein;

2–19–60: Directing secretary and treasurer of Preston County Supply Company to cancel on books of Supply Company all outstanding shares in names of minors and to re-issue such shares in the name of their mother as trustee for them; and

12–28–60: Directing (nunc pro tunc) that sole custody of minor children be with mother, with visitation rights of father to be determined by the Court.[4c]

■ From this background, it is readily seen that there is here involved a conflict in jurisdiction of two courts—Preston County Circuit Court of West Virginia and the United States District Court for the Northern District of West Virginia—the former having first obtained dominion over the case by reason of the suit brought therein on 12–5–63. The jurisdiction of the federal court was not invoked until 1–2–64. Thus, it becomes pertinent to look to the relationship that each of these courts bears to the other in this controversy and to put such relationship in proper perspective under the facts and circumstances of this case. This is necessary in order to determine which court, if either, should yield to the other where, as here, jurisdiction for federal intervention is based solely on diversity of citizenship. Fortunately, the answer was given by Chief Justice

4c. Legality of these orders is denied by the Raeses on the ground that they were not served with process; were not before the Florida Court; and that that court in the making of these orders had no jurisdiction over them or their shares in Supply Company.

Marshall in Smith v. McIver, 9 Wheat. 532, 6 L.Ed. 152, as far back as 1824, in these words:

"In all cases of concurrent jurisdiction, the court which first has possession of the subject-matter must determine it conclusively."

With some modification, now and then as exigencies required, the fundamental concept of this rule has been adhered to by both state and federal courts with remarkable consistency. 14 Am.Jur. (Courts) Sec. 243, p. 435. In Jackson v. Parkersburg & O. V. Electric Ry. Co. (N.D.W.Va.1916), 233 F. 784, where a conflict arose between the state court and the federal court over which had prior jurisdiction, Judge Dayton said:

"Where suits are brought in courts of concurring jurisdiction, involving a controversy between substantially the same parties or their privies, and no seizure of the res is made, that court in which suit is first brought is entitled to exclusive jurisdiction."

The general rule is in accord. See 21 C.J.S. Courts § 529, p. 808, where it is stated:

"Where a state and a federal court have concurring jurisdiction over the same parties or privies and the same subject matter, the tribunal where jurisdiction first attaches retains it exclusively, and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case."

And in Local 333B United Marine Division etc. v. Battle, 101 F.Supp. 650, affirmed 342 U.S. 880, 72 S.Ct. 178, 96 L.Ed. 661, it was said:

"Proper comity between state and federal courts also requires that a federal court should interfere with proceedings in a state court, even when the federal court has that power, only upon a clear and convincing showing of the clear-cut necessity for the exercise of that power."

Therefore, it seems clear that where, as here, interpleader rests upon diversity alone, and where, as here, the substantive rights of all parties are measured by state law, this Court should desist from interfering with the orderly processing of issues by the state court, unless there are substantial equitable considerations present dictating a contrary view. We find none here. To the contrary, it is clear that Preston and Public Service are the mere instruments of the Kellys. Everything in the record indubitably points to this. They were brought into being by the Kellys and are obviously subject to their every command and dictate. Thus, their actions, and the reasons and motives behind them, must, in reality, be taken and considered as the actions and motives of the Kellys. So viewed, the practical mind cannot help but conclude that there is no conflict in interest here between these companies and the Kellys. It was by the vote of Jane G. Kelly, as the controlling stockholder of Supply Company, that Preston emerged as the successor to Supply Company over the objection and protest of the latter's minority stockholders. Having thus become an accessory to the design by the Kellys to effectuate the reorganization plan in disregard of the wishes of the minority stockholders, Preston and Public Service ought not in good conscience be permitted to now seek by way of interpleader, where equitable principles must be applied, the aid and protection of the Court from anticipated vexatious demands or litigation growing out of their own questionable conduct. Especially should this be so since Preston was made a party defendant to, and lawfully served with process in, the state court suit in Preston County. The very purpose and nature of that suit was to challenge the legality of the proposed reorganization and its consummation. This forewarning to Preston, as to its future actions and conduct, removes it from the realm of an innocent party.

Under such circumstances, these companies are hardly in position to ask a court of equity to relieve them from the

untenable situation complained of. Nor does it appear that there exists any basis in fact for the apprehended fear by Preston that it stands in danger of Jane G. Kelly with reference to the shares and dividends in question. Her dominant control of Preston renders this a most unlikely eventuality. As between Preston and Kelly, there is and can be no *real* fight, since they are for all practical purposes one and the same. The factual situation here in this regard is remarkably similar to that in Bierman v. Marcus, 246 F.2d 200 (3rd Cir. 1957), where a Bill in Interpleader was dismissed for lack of equity. There interpleader was sought by Bierman and Miller, who were the controlling stockholders of Milmar, Inc., on the theory that *their* corporation might assert against *them* a claim for the unpaid purchase price of its shares. The Court found that the apprehended fear of Bierman and Miller was not asserted in "good faith" and that there was no real danger of Milmar, Inc., which they controlled, involving them in any vexatious demands. Consequently, the Court concluded by saying that

"[W]here the plaintiff knows that he can safely pay one party without substantial risk of vexatious demand by a rival claimant interpleader will not lie."

So it is here. There is present no real basis for Preston to fear its progenitor, Jane G. Kelly. Moreover, the very basis for vexation allegedly feared by the interpleader-plaintiffs flows directly from the consummation of the plan of reorganization over the protest of the minority stockholders, and whatever predicament, real or imaginary, they may now find themselves in with reference to the rival claimants to the shares and dividends in question, cannot be dissociated from the methods and procedures employed by them and the Kellys in effectuating the plan of reorganization.

Thus, it is clearly apparent to this Court that the *ex parte* court orders of Judge Holt, cancelling the share certificates of the infants in Supply Company and directing their re-issue in the name of Jane G. Kelly as trustee for them, were obtained by the Kellys in furtherance of their determination to get control of the voting rights of the infants' shares. This was evidently deemed necessary to circumvent the statute law of West Virginia (Code 31–1–81) relating to the rights of minority-dissenting stockholders. For there, it is specifically provided that where holders of one-fifth or more of the outstanding shares dissent from proposed action of the majority, the minority are entitled, in equity, to seek either payment in *cash* of the fair value of their shares or a decree of dissolution and liquidation.[5] The West Virginia Supreme Court of Appeals upheld this statute in Hall v. McLuckey, 134 W.Va. 595, 60 S.E.2d 280; Tierney v. United Pocahontas Coal Co., 85 W.Va. 545, 102 S.E. 249; and the Iowa Supreme Court applied it in Otjes v. Bagley, 217 Iowa 1200, 250 N.W. 17. The federal courts are bound by state statutes and state court decisions in such matters. Hirsch v. Independent Steel Co., 4 Cir., 196 F. 104. In Metcalf v. American School Furniture Co., 2 Cir., 122 F. 115, it was said:

"Abundant authority exists for holding that, conceding the authority of a corporation to sell its property to another corporation, the stock in payment of such property cannot be forced upon dissenting stockholders."

This court can conceive of no injury resulting to either Preston or Jane G. Kelly by its declining to assume jurisdiction. To the contrary, it would appear that they should benefit from it. Both Preston and Kelly, being parties to the state court action, can therein undoubtedly set up their respective positions and grievances by proper pleadings and secure trial and final adjudication thereof. In that court, for example, un-

---

5. The shareholdings of dissenting stockholders are equivalent to approximately 30% of Supply Company's outstanding shares.

der its general equity jurisdiction, Mrs. Kelly can have declaratory judgment as to the legal effect of the Holt orders. Dolan v. Hardman, 126 W.Va. 480, 29 S.E.2d 8. It is seriously doubtful if she has a right to such relief in this court in interpleader, in view of the fact that there is a legal remedy available to her through the Federal Declaratory Judgment Act, 28 U.S.C., Ch. 151, § 2201. See 48 C.J.S. Interpleader § 8, p. 44, where the rule is

"[I]nterpleader is allowed only where it appears the remedy is necessary and that the petitioner has no adequate remedy at law."

Moreover, there is available to her at the state level a Declaratory Judgment Act (Code 55–13–1 et seq.) if she should have need to use it. Likewise, in the state court, the right of Preston to prosecute and have jury trial of its Cross-Claim for damages against Richard A. Raese, where personal service of process can be had on him, would seem to work to its advantage; whereas, whether such can be done in this court in an interpleader action is fraught with considerable uncertainty. Liberty Oil Co. v. Condon Nat. Bk., 260 U.S. 235, 244, 43 S.Ct. 118, 67 L.Ed. 232; Bynum v. Prudential Life Ins. Co. (D.C.S.C.) 7 F.R.D. 585; 2 Barron & Holtzoff, Sec. 555, p. 138; Liberty Nat. Life Ins. Co. v. Brown, 119 F.Supp. 920 (M.D.Ala.1954). Indeed, in the recent case of Metropolitan Life Ins. Co. v. Enright, (S.D.Calif.1964) 231 F.Supp. 275, it was held that there is no jurisdiction in interpleader to grant judgment in personam as to subject-matter apart from that deposited in court, citing 48 C.J.S. Interpleader § 47, p. 100, where the rule is stated:

"The court ordinarily should decree the rights of the parties only with respect to the particular fund or property which is the subject matter of the litigation."

Neither is the difference in the locale of the two courts of any significance since the seat of this court at Fairmont is less than thirty miles from the seat of the state court at Kingwood, where Preston's and Kelly's West Virginia counsel is located. Nor is there any showing in the record suggesting in any way that the judge of the state court is biased or prejudiced for or against any party to the litigation or that he is not fully competent and qualified to hear all issues and render impartial justice with reasonable dispatch.

If, per chance, Preston and Public Service should deem it necessary to interplead in the state court to protect their interests, they will find there available to them for that purpose a rather comprehensive interpleader statute, West Virginia Code 56–10–1, and Rule 22 of West Virginia Rules of Civil Procedure, in all essential features, the same as Rule 22 of the Federal Rules of Civil Procedure.

As has been clearly seen, a resolution of the issues raised by the state suit and the interpleader action is dependent in no way upon any federal substantive law, and in that case the state substantive law must be applied to the issues whether they be tried here or in the state court. This is required by the holding in Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, in these words:

"There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' they be commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. * * * Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."

Therefore, mindful that the orderly administration of justice requires that due respect be accorded the rule of comity between courts of concurrent jurisdiction, and finding in this record no salutary reason, in law or equity, to de-

part therefrom, this court will accordingly exercise its discretion and desist from taking jurisdiction of the interpleader action. This recognition by this court of the prior jurisdiction and ability of the state court to hear and resolve all issues comports with reason and logic and is supported by respectable authority. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 82, 67 L.Ed. 226; and Flanagan v. Marvel, (D.Minn.1950), 94 F.Supp. 145. In the Flanagan case, where the Kline case is cited and relied upon, the rule is correctly stated thusly:

"There is no possibility of the plaintiff herein, as executor, being subjected to any suit or claims in any other jurisdiction by any of these claimants. The State Court can grant full and complete relief as between the claimants to the property in his hands. True, he is merely a stakeholder and there is merit to his position that these parties should settle their controversy without involving him in any protracted litigation. But the Minnesota interpleader statute, Section 544.12, should afford plaintiff ample opportunity for relief in that regard. There is, therefore, on this showing, an absence of any circumstances which, under the federal interpleader statute, to properly invoke any equity jurisdiction of this Court. In other words, the equitable basis for assuming jurisdiction under the interpleader statute is wanting."

Mutual Life Ins. Co. of New York v. Egeline (D.C.) 30 F.Supp. 738, is also cited as authority in the Flanagan case, where it was said:

"Where (the) hazard has been removed by reason of all the parties having been subjected to the jurisdiction of a court of competent jurisdiction before any proceedings have been instituted in the Federal Court, the purpose of the federal statute has been accomplished without the necessity of its application. While the federal jurisdictional facts still exist in such case, the equitable grounds do not."

The rule has been more recently recognized in Prudential Insurance Co. v. Shawyer, (W.D.Mo.1962) 208 F.Supp. 464.

It is insisted by interpleader-plaintiffs that the Florida District Court, in ordering a transfer to this court, assumed jurisdiction and that this court should hear the interpleader upon its merits. This contention is without merit. The transfer order specifically recites that the transfer was made for "convenience of the parties" and there is nothing therein which could be construed as an attempt by that court to restrict this court in the free exercise of its discretion.

It should be understood by all parties that in reaching its decision to desist from assuming jurisdiction of the interpleader action and in giving its reasoning therefor, this court has made no attempt to pass upon the merits of the several claims asserted and, accordingly, neither the parties nor the state court of Preston County should draw any inferences as to the merits from what has been said herein. Where facts have been alluded to, it was done for the purpose only of demonstrating the absence of equitable considerations calling for this court to interpose its jurisdiction in a matter of purely local-state concern.

The record indicates considerable factual disagreement. Too, much animosity is evident. Each side questions the motives and integrity of the other. Only after full development of the facts may blame be assessed and this unfortunate litigation brought to an end. This court has full confidence in the wisdom and integrity of the state court to do justice between the parties.

Motion to dismiss interpleader action granted for reasons stated.