KOEHRING COMPANY, a Wisconsin corporation, Plaintiff-Appellant,

v.

HYDE CONSTRUCTION COMPANY, Inc., a Mississippi corporation, Vardaman S. Dunn, an individual, Charles Clark, an individual, Jack N. Hayes, an individual, David H. Sanders, an individual; Gable, Gotwals, Hays, Rubin & Fox, a partnership, Cox, Dunn & Clark, a partnership, United States Fidelity & Guaranty Co., a Maryland corporation, The First National Bank of Jackson, a Mississippi corporation, Circle "L" Electric Company, a partnership, and Fidelity and Deposit Company of Maryland, a Maryland corporation, Defendant-Appellees and Cross-Appellants.

Nos. 17502–17504.

United States Court of Appeals,
Seventh Circuit.

March 19, 1970.

Steven E. Keane, William A. Denny, Maurice J. McSweeney, Milwaukee, Wis., for appellant, Koehring Co.

Walter A. John, Milwaukee, Wis., for appellant Fidelity and Deposit Company of Maryland.

Reginald W. Nelson, Milwaukee, Wis., Vardaman S. Dunn, Charles Clark, Jackson, Miss., Cox, Dunn & Clark, Jackson, Miss., Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for appellees.

Before HASTINGS, Senior Circuit Judge, CUMMINGS, Circuit Judge, and DILLIN, District Judge.*

DILLIN, District Judge.

This appeal was taken by the plaintiff, Koehring Company (Koehring), a Wisconsin corporation, from a ruling of the District Court dismissing its statutory action in the nature of interpleader, filed pursuant to 28 U.S.C. §§ 1335, 1397. Defendant Fidelity and Deposit Company of Maryland (Fidelity), plaintiff's co-debtor in a Mississippi judgment recovered by the defendant Hyde Construction Company, Inc. (Hyde),[1] appeals from a similar ruling dismissing its cross-claim for interpleader against its codefendants. We affirm.

The history of the antecedent litigation between Koehring and Hyde, including ancillary matters involving Varda-

man S. Dunn, one of Hyde's attorneys, is contained in some seventy-eight pages of federal and state reports, the order from which this appeal is taken being reported at 297 F.Supp. 731.[2] This formidable body of legal literature discloses that Hyde commenced its simple suit for breach of warranty in the Chancery Court of Hinds County, Mississippi in 1961, having first initiated the same as a diversity action in the United States District Court for the Southern District of Mississippi only to have that action transferred to the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1404(a). Koehring could clearly have removed the Chancery Court action to the same Mississippi District Court, 28 U.S.C. § 1441(a), but declined to do so and answered on the merits. The result is that the Chancery Court has had jurisdiction of the principal action, long since final but for collection of the judgment, since 1961.

Having failed to extricate itself from the jurisdiction of the Chancery Court by the simple expedient of removal, Koehring has nevertheless resisted the exercise of that jurisdiction by other means for nearly a decade. Specifically, it first prevailed upon the Oklahoma District Court to enjoin proceedings in the Chancery Court, and when the Chancery Court nevertheless proceeded to try the case, it obtained a further Oklahoma injunction enjoining Hyde from attempting to collect its judgment. All of such injunction proceedings were in deroga-

---

* Judge Dillin is sitting by designation from the Southern District of Indiana.

1. Hyde's judgment in the trial court was against Koehring only. Koehring appealed, with Fidelity as surety on a supersedeas bond. When the judgment was affirmed as modified by the Mississippi Supreme Court, that Court, in accordance with Mississippi law, entered judgment against both the principal and surety, and certified the same back to the trial court for collection.

2. For complete details, see Koehring Company v. Hyde Construction Company, 5 Cir., 1963, 324 F.2d 295; Hyde Construction Company v. Koehring Compa-

ny, 10 Cir., 1965, 348 F.2d 643, rev. 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416, reh. den. 383 U.S. 939, 86 S.Ct. 1062, 15 L.Ed.2d 857; Dunn v. Stewart, S.D. Miss., 1964, 235 F.Supp. 955, rev. Stewart v. Dunn, 5 Cir., 1966, 363 F.2d 591; Hyde Construction Company v. Koehring Company, 10 Cir., 1968, 388 F.2d 501, cert. den. 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419; Dunn v. United States, 10 Cir., 1968, 388 F.2d 511; Koehring Company v. Hyde Construction Company, 1965, 254 Miss. 214, 178 So.2d 838, 182 So.2d 580; Koehring Company v. Hyde Construction Company, 1965, 253 Miss. 675, 178 So.2d 857.

tion of 28 U.S.C. § 2283, as held in Hyde Construction Company v. Koehring Company, 10 Cir., 1968, 388 F.2d 501, cert. den. 391 U.S. 905, 88 S.Ct. 1654, 20 L. Ed.2d 419. Even after the Tenth Circuit's decision became final by the denial of certiorari by the Supreme Court on May 6, 1968, Koehring persisted in its efforts to thwart the Chancery Court by intervening in a criminal contempt proceeding pending against Hyde in the Oklahoma court, again seeking an injunction to prevent Hyde from proceeding in Mississippi to collect its judgment. This time the Oklahoma court wisely declined, by order dismissing Koehring's petition on May 23, 1968.

Free at last, Hyde sought to enforce its judgment, so bitterly won. On May 24, 1968, it proceeded in accordance with normal practice to cause a writ of execution to issue to the sheriff, who in turn issued several writs of garnishment against firms indebted to Koehring and Fidelity. Its freedom proved illusory. Time and the course of litigation had not left all parties in the status quo ante. By 1968 Hyde had become insolvent and the judgment had been twice assigned and was subject to attorneys' liens and other claims. On this pretext Koehring, alleging fear of being exposed to multiple claims, commenced its interpleader action on March 27, 1968 and

secured yet another ex parte injunction, this time from the Wisconsin court, enjoining Hyde and its codefendants in the Wisconsin case from enforcing the judgment. Fidelity echoed Koehring's demands by way of cross-claim. Although the Wisconsin court eventually dismissed the action and cross-claim, giving rise to this appeal, the injunction, as modified by our own Court on April 29, 1969, has been continued in effect.[3]

Complex as the factual and legal history of this case may be, there is but one issue before this Court: Has a federal district court the discretion to dismiss an action in statutory interpleader on grounds of equity and comity, when the interests of the stakeholder and all claimants will be adequately protected in a pending state court proceeding? The short answer is yes.

## II

Stating the question as we have makes an assumption about an issue which was strenuously controverted by Koehring in the District Court, and by both Koehring and Fidelity on this appeal—the adequacy of the protection afforded by Mississippi law against the hazard of multiple claims. Of course, with the benefit of hindsight it is easy to show that the Mississippi procedure was quite adequate.[4] Treating the matter as it was

3. The modification permitted the Chancery Court, pursuant to its own interpleader proceeding arising out of the garnishments, to proceed to adjudicate the merits of the various claims and priorities asserted as to the proceeds of the judgment. It has done so.

4. The Chancery Court, on June 18, 1969, adjudicated the claims and their priority, and ruled that defendants herein Vardaman S. Dunn, Charles Clark, and William H. Cox, Jr., attorneys doing business as Cox, Dunn & Clark, were entitled to a certain part of the judgment pursuant to their valid and subsisting attorneys' lien, and that the balance after deduction of costs and expenses was due to the defendant United States Fidelity and Guaranty Company (USF&G). All parties to the Wiscon-

sin interpleader action, plus additional persons suggested as potential claimants, were interpleaded in the Mississippi proceeding, and duly served with legal notice and summons pursuant to Mississippi law, requiring them to appear and file their claims on or before June 2, 1969. Koehring, Fidelity, and one Robinson, a Mississippi sheriff, each personally served in Mississippi, elected not to assert a claim. All other potential claimants, other than the above mentioned attorneys and USF&G, either disclaimed or stipulated that they had no right to the proceeds. USF&G is presently appealing the allocation to Cox, Dunn & Clark to the Supreme Court of Mississippi, but only on the basis that such award was too high; regardless of the outcome of such appeal, therefore, it is certain that the judgment will be divided between

before Judge Reynolds, as we must do, there can be no different answer.

A Mississippi statute specifically provides for interpleader in garnishment proceedings,[5] under which the Chancery Court proceeded. Indeed, Koehring itself caused one of its debtors-garnishee to invoke the interpleader provisions of such statute, as a result of which all interested parties, including Koehring and Fidelity, were interpleaded. Appointment of a receiver to receive and disburse the judgment proceeds under the court's order is likewise statutory.[6] Even in the absence of statute, it is elemental that a Chancery Court, a court of general equitable jurisdiction, would possess the inherent power to discharge judgment debtors upon payment of the debt, and to provide for proper distribution of the fund. Koehring's argument to the contrary is to argue, in effect, that a judgment debtor in Mississippi may never be free from duplicitous claims to the proceeds of the judgment—an argument which would seem ridiculous on its face, and is totally unsupported by authority. Fidelity has no

independent claim of jeopardy since a discharge of the principal by payment would of course operate to discharge the surety.

So, for example, in Kelly v. Howard, 98 Miss. 543, 54 So. 10, when a widow secured a judgment as sole plaintiff under the Mississippi wrongful death statute and caused execution to issue against the defendant railroad company, the defendant promptly paid the amount of the judgment to the sheriff, at the same time putting the sheriff on notice that certain children of the deceased and defendant itself claimed an interest in the judgment. The sheriff thereupon filed a bill of interpleader in the Chancery Court, interpleading the widow, her attorneys, the children and the railroad company, and paid the money into court. The Chancery Court dismissed the bill, but the Supreme Court of Mississippi reversed, holding the case a proper one for interpleader. The courts of other jurisdictions have held interpleader unavailable to the sheriff, because, it is said, he has the remedy of simply paying the money into court, and by making a full

Cox, Dunn & Clark, on the one hand, and USF&G on the other, with all other alleged claims eliminated.

Further, the Chancery Court appointed its clerk as receiver to collect the proceeds of said judgment and disburse the same in accordance with its order and ruled that upon collection of such proceeds by the receiver, both Koehring and Fidelity will be fully discharged from the judgment debt, without responsibility for the distribution of such proceeds.

5. *Mississippi Code of 1942*, § 2804, reading as follows:

"When a garnishee, by his answer or by affidavit at any time before final judgment against him, or after such judgment if he had no such notice before the judgment was rendered, shall show that he has been notified that another person claims title to or an interest in the debt or property, which has been admitted by him, or found on a trial to be due or to be in his possession, the court shall suspend all further proceedings, and cause a summons to issue or publication to be made for the person so claiming to appear and contest with the

plaintiff the right to such money, debt, or property. In such case, if the answer admit an indebtedness, and the garnishee pay the money into court, he shall thereupon be discharged from liability to either party for the sum so paid. And whenever such garnishee shall by said answer or affidavit show that he has been notified that another person claims title to or interest in such debt or property, it shall be lawful for such third person of his own motion to come in and claim the debt or property, and the claim shall be tried as other claimant's issues are tried whether summons or publication has been made to bring him in or not."

6. *Mississippi Code of 1942*, § 1362, reading as follows:

"When money shall be paid into court under its order, a receiver may be appointed to keep the same, who shall give bond and security as in other cases; but if the money shall be ordered to be paid to the clerk of such court, his official bond shall cover it, and an additional bond may be required if the court or chancellor shall think proper."

return as to the conflicting claims. The court thereupon decides the conflicting claims. *Cf.* McDonald v. Allen, 37 Wis. 108.

■■ The point of the above cases is that when the sheriff collects money on an execution he thereby becomes charged with the duty of applying the same properly, and if notified of conflicting claims to the proceeds it becomes his responsibility, and not that of the judgment debtor, to see that such proceeds are paid to the proper person. Turner v. Fendall, 1 Cranch 117, 2 L.Ed. 53. From this we conclude that Koehring's alleged fear of being exposed to multiple litigation was ill-founded, if not sham; all it has ever had to do to relieve itself has been to pay the amount of the judgment to the Sheriff of Hinds County on his execution, put him on notice of the alleged conflicting claims, and thereby transfer the burden to his shoulders, as was done by the Mississippi defendant in *Kelly*.

### III

Appellants, however, urge reversal on the ground that, jurisdiction having been found technically to exist in the District Court within the federal interpleader statute, that Court had no discretion to dismiss. Reliance is placed, in part, upon Railway Express Agency v. Jones, 7 Cir., 1939, 106 F.2d 341. It is true that that decision has been cited by one authority for the proposition that if the court has jurisdiction and the facts meet the legal requirements of interpleader, the right to the remedy is absolute.[7] However, our statement in *Railway Express* was carefully qualified in the same paragraph in which it appears by the following language: "We are now speaking of one who lawfully came into possession of funds, like an insurance company, a bank, a railroad, or an express company, and who has not lost that lawful and innocent character by laches or acts which would create an estoppel against it." This is simply to say that equitable defenses or other matters directed to the conscience of a court of equity must be considered. Inasmuch as interpleader is an ancient equitable remedy, Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, it would be incongruous to hold otherwise.

Consistent with this position, we agree with the remarks of Professor Moore, who has stated:

" * * * It should also be within the discretion of the interpleader court, sitting as a court of equity, to decline to exercise jurisdiction when there is an action pending elsewhere wherein the liability of the stakeholder to all claimants may be fairly and conclusively determined. In such a case, the fear of multiple vexation and inconsistent liability which serves as the premise for interpleader relief may be absent; this, in addition to the prior lodging of jurisdiction in another tribunal, may properly convince the interpleader court that it is both safe and prudent to stay its hand. If these conditions are met, there is no reason to believe that the interpleader statute compels the exercise of jurisdiction, thus depriving the court of the discretion traditionally exercised to deny equitable relief when there is another adequate remedy 'at law.' There is strong support for this proposition in the federal cases."[8]

---

7. 2 Barron & Holtzoff, Federal Practice and Procedure § 551, footnote 11.

8. 3A Moore, Federal Practice, ¶ 22.16 [1], at 3138 (2d Ed.1967), citing B. J. Van Ingen & Co. v. Connolly, 3 Cir., 1955, 225 F.2d 740; Preston Corporation v. Raese, N.D.W.Va., 1964, 236 F. Supp. 135, aff'd *sub nom* Kelly v. Raese, 4 Cir., 1967, 377 F.2d 263, cert. den. 389 U.S. 931, 88 S.Ct. 294, 19 L.Ed. 2d 283; Gulf Oil Corp. v. Eisenhour, N.D.Ohio, 1959, 158 F.Supp. 663, aff'd *sub nom* Hickok v. Gulf Oil Corp., 6 Cir., 1959, 265 F.2d 798; Flanagan v. Marvel, D.Minn., 1950, 94 F.Supp. 145, app. dism'd, 8 Cir., 1951, 189 F.2d 966; Prudential Ins. Co. of America v. Shawver, W.D.Mo., 1962, 208 F.Supp. 464; Mutual Life Ins. Co. of New York v. Egeline. N.D.Cal., 1939, 30 F.Supp. 738.

Considering the ample procedures available for their protection in Mississippi, we perceive no equity in the position of the appellants. Moreover, to encourage a practice of denying the state courts of general jurisdiction the right to enforce their own judgments through the device of federal interpleader would be most disruptive of a healthy federalism. There are strong reasons for the federal courts to relinquish their jurisdiction in favor of the state courts, where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers. Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841.

Accordingly, we affirm. The temporary injunction heretofore granted by the District Court, as modified, is dissolved in its entirety.

